Sea . .
Notary .
My Commission expires June 30, 1971

John A. HOLMES, Jr., Chairman, Republican State Central Committee

v.

Roger N. BEGIN et al.

No. 96–488–M.P.

Supreme Court of Rhode Island.

Oct. 31, 1996.

David J. Strachman, Providence, for Plaintiff.

Robert E. Craven, Anthony J. Bucci, Jr., Providence, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

This case came before the court for oral argument September 25, 1996, pursuant to a motion for reargument filed by the petitioner, John A. Holmes, Jr., in his capacity as chairman of the Republican State Central Committee (Holmes). The motion for reargument followed a hearing before four members of the court that resulted in an evenly divided court that had the effect of affirming the decision of the State Board of Elections. In addition to the original parties, James Langevin, in his capacity as Secretary of State for the State of Rhode Island participated in the hearing on September 25, 1996, his motion to intervene having been granted.

After hearing the arguments of counsel and examining the memoranda filed by the parties, the court entered the following order:

"1. The petition for certiorari is hereby granted. The decision of the Board of Election is hereby quashed and the Secretary of State is ordered to place the name of David E. Houle on the ballot in accordance with the nomination of the Republican State Chairman.

"2. An opinion will follow setting forth the reasons for the foregoing order."
*Holmes v. Begin,* No. 96–488–M.P. (R.I., filed Sept. 25, 1996).

This opinion contains the reasons for the entry of the foregoing order by the court on September 25, 1996. The facts underlying this controversy are undisputed.

Representative District No. 61 includes portions of both the town of North Smithfield and the town of Burrillville. As set forth in our opinion in the case *Houle v. Begin,* 682 A.2d 1384 (R.I.1996), Houle was not qualified as a voter in either North Smithfield or Burrillville at the time of the filing of his declaration of candidacy. Therefore, he was unable to file as a candidate for the party nomination as State Representative at the primary election that took place September 10, 1996. Consequently no Republican nomination occurred on that date.

Thereafter, prior to 4 p.m. on the third day following the last day for the holding of party primaries, Holmes in his capacity as chairman of the Republican State Central Committee had nominated Houle as the Republican Party's candidate for State Representative from Representative District No. 61. This nomination was rejected by the State Board of Elections (board) in a decision rendered on August 21, 1996. Holmes then petitioned for a writ of certiorari to review the decision of the board. The writ was issued, and hearings were held before this court September 18, 1996, and thereafter pursuant to a petition for reargument on September 25, 1996.

■ We believe that this case is controlled by our opinion in *Dahl v. Begin,* 660 A.2d 730 (R.I.1995). In that case we quoted the provisions of G.L.1956 § 17–12–2(3) that confers upon the state committee of a political party the

> *"power to make a final nomination for any state office for which no primary nomination has been made and any local office for which no nomination has been made by any authorized city, town, ward, or district committee or any duly authorized subcommittee [.]"* 660 A.2d at 731. (Emphasis added.)

In that case the entire slate of the Democratic Party for town offices in the town of Jamestown had been held to be ineligible to participate in the primary on the grounds

that their filing of nomination papers had been filed one day after the deadline. The board had determined that the party chairman could not in those circumstances name a slate for town offices pursuant to § 17–12–2(3).

This court disagreed with the board and held that the plenary power of the state committee acting through its chairperson was clearly and unequivocally authorized by the statute. Our opinion contained the following observation:

"Our reading of subsection (3) of § 17–12–2 clearly indicates to us that the state committee is granted the power that it purported to exercise in this instance. It is well-settled doctrine that when a statute is unambiguous and expresses a clear and sensible meaning, the work of construction is at an end and this meaning will be implemented in accordance with the plain language set forth. *See, e.g., State v. Powers*, 644 A.2d 828, 830 (R.I.1994); *Kirby v. Planning Board of Review of Middletown*, 634 A.2d 285, 290 (R.I.1993); *Ellis v. Rhode Island Public Transit Authority*, 586 A.2d 1055, 1057 (R.I.1991); *O'Neil v. Code Commission for Occupational Safety and Health*, 534 A.2d 606, 608 (R.I. 1987); *Moore v. Rhode Island Share and Deposit Indemnity Corp.*, 495 A.2d 1003, 1004 (R.I.1985). In the case at bar, the authority given to the state committee to make a final nomination for any local office for which no nomination has been made by any authorized city, town, ward, or district committee, or any duly authorized subcommittee, could not be more plain and unambiguous." *Dahl*, 660 A.2d at 731.

In the case at bar we are of the opinion that Holmes had the same power to nominate Houle as the Republican Party's candidate for State Representative that the Democratic State chairman had to nominate a slate for local offices in Jamestown. This power is plenary and unequivocal. We also hold that the qualification for office must be tested as of the date of the nomination made by the State chairperson and not as of the date a candidate would have had to file a declaration of candidacy for the primary election under § 17–14–1. The language of G.L.1956 § 17–15–38 is not controlling since that statute deals with vacancies that result from death, disability, or the candidate removing himself or herself from the race or the jurisdiction of the office they seek. We do hold, however, that the timing of the nomination as set forth in § 17–15–38, namely, that it should be made "no later than four o'clock (4:00) p.m. of the third day following the last day for the holding of the party primaries," should be applied to § 17–12–2 in order to sustain the requirement of an orderly process for the nomination of candidates. It is undisputed that in the present case the nomination was made within that time limit and that Houle was eligible to be a candidate on the date he was nominated.

For the reasons stated, we entered the order noted above on September 25, 1996. The papers in this case may be remanded to the board with our decision endorsed thereon.

FLANDERS, Justice, dissenting.

I respectfully dissent because I do not believe our election laws allow the state's political parties to nominate candidates for public office who were ineligible to file declarations of candidacy for such an office as of the deadline for doing so.

### Background

On August 16, 1996, this court issued an order disqualifying David E. Houle (Houle) as a candidate for the office of State Representative in Representative District No. 61 (covering portions of the towns of North Smithfield and Burrillville). Our reasoning was that Houle was ineligible to file a declaration of candidacy for that office because he had not registered to vote from his new address in Burrillville until June 18, 1996. Accordingly, when Houle filed his declaration of candidacy on June 25, 1996, he was not "qualified to vote in a primary within the district for the office which he * * * seeks," G.L.1956 § 17–14–2, because he had not been registered to vote "in that city or town and voting district at least thirty (30) days next preceding" the filing of his declaration, G.L. 1956 § 17–1–3.

In reaching this result, we said that "[i]t is necessary" to read § 17–14–2 "together" with the requirements of § 17–1–3. *Houle v. Be-*

*gin,* 682 A.2d 1384, 1385 (R.I.1996). We rejected Houle's argument that his previous registration within the same representative district but in a different town should allow him to be a candidate because to accept this position would require us to "rewrite the terms" of § 17–1–3, *id.* at 1386, terms that required candidate Houle to have been registered to vote in his *new* municipality "for at least thirty days prior to the filing of his declaration." *Id.* at 1385.

Finally, we stated that Houle's failure to have registered as a voter in Representative District No. 61 for at least thirty days preceding the filing of his declaration *"cannot be cured under our present statutory framework* and the case law that has interpreted and applied those statutes." *Id.* at 1386. (Emphasis added.)

Notwithstanding this ruling, the majority now declares that Houle's predicament was not incurable after all. On July 24, 1996, the Republican State Central Committee, by its chair, responded to the decision of the State Board of Elections (board) to disqualify Houle by purporting to appoint him pursuant to the power conferred on state committees of political parties "to make a final nomination for any state office for which no primary nomination has been made * * *." General Laws 1956 § 17–12–2(3). However, on August 21, 1996, the board, taking note of our August 16, 1996 ruling declaring Houle to be ineligible as a candidate for State Representative District No. 61, rejected Houle's attempt to become a candidate through the back door after the board (with our concurrence) had barred his entrance through the front.

Thereafter, the Republican State Central Committee, through its chair, filed a petition for a writ of certiorari with this court on September 11, 1996, requesting that we (1) overturn the board's decision and (2) mandate—despite our recent disqualification of his candidacy—that Houle's name nonetheless be placed on the ballot for the general election in November as the Republican candidate for the Sixty-first Representative District. We issued a writ of certiorari to answer the question raised by the petition. Initially, because the four members of the court who heard the original argument were equally divided, the board's decision to disqualify Houle was effectively affirmed. We then granted reargument so that the full court could rule on this matter. After reargument, the court issued a brief order quashing the board's decision and ordering that Houle's name be placed on the ballot.

### Analysis

Pursuant to § 17–12–2(3), the state committee of a political party has the unquestioned power "to make a final nomination for any state office for which no primary nomination has been made * * *." In *Dahl v. Begin,* 660 A.2d 730 (R.I.1995), we confirmed that this power still existed notwithstanding the repeal of a prior statute (G.L.1956 § 17–14–17.1) that had also purported to give state committees the power to fill vacancies. Thus, in *Dahl* we upheld the Democratic State Committee's designation of a slate of local candidates who had failed to file their nomination papers by the deadline. However, unlike the present situation, it appears from the facts recited in *Dahl* that the candidates were all eligible and qualified to run for the offices in question as of the date for filing their candidacy declarations, but they thereafter disqualified themselves when they failed to file their nomination papers on time.

Here, however, in contrast to *Dahl,* Houle was *not* qualified to be a candidate on the date for filing his declaration of candidacy. Thus, he was not eligible to be nominated for that office under § 17–14–2. Accordingly, rather than be controlled by the result we reached in *Dahl,* we are now faced with deciding a question not addressed there: whether, in exercising its power to make a final nomination for any state office for which no primary nomination has been made, the state committee of a political party (or, as here, its chair) must appoint a person who would have been qualified to run for the office in question as of the original filing date for declaring one's candidacy. Or, to put it another way, is the state committee free to appoint someone like Houle who was unqualified as of the original date but who has since become a qualified voter on or before the date the state committee makes its nomination?

Although § 17–12–2 is silent not only concerning what qualifications, if any, the substitute candidate must have but also concerning what date controls for the purpose of deciding whether the appointment is timely and whether the candidate possesses the requisite qualifications, all parties agree that the designated candidate must be qualified, that is, he or she must have been registered to vote in the district *and* in the town where he or she presently lives at least thirty days before whatever date is appropriate to test whether a candidate is qualified to run for the office in question. But petitioner claims that the qualification date is the date on which the substitute nomination is made by the state committee (or its chair) while the board and the Secretary of State claim that the substitute candidate must be qualified as of the original declaration-of-candidacy filing date.

Fortunately, there are other election laws that provide us with unmistakable signposts in regard to the path we should follow to find our way out of this statutory thicket. General Laws 1956 § 17–15–38 states as follows:

"Whenever the nominee of a party for a particular office dies after the primary or removes him or herself from the jurisdiction of or as a candidate for the office for which the nominee seeks election or becomes physically or mentally disabled, the state committee of that party * * * may file with the appropriate authority the name of its nominee for the office; Provided however, That except in the case of death, the appropriate committee shall file the name with the appropriate authority no later than four o'clock (4:00) p.m. of the third day following the last day for the holding of the party primaries; and *provided* further, *that any appointed nominee shall have been eligible for the nomination on the dates as required by and pursuant to the requirements of* §§ 17–14–1.1 [requiring that the candidate shall not have been a member of a political party other than the declared political party within ninety (90) days of the filing date for the declaration of candidacy], *17–14–2 [providing that no person shall be eligible to file a declaration of candidacy, to be voted for or to be nominated or elected in a party*

*primary unless, as of the date for filing declarations of candidacy, such person is qualified to vote in a primary within the district where he or she seeks office],* and 17–14–2.1 [precluding independent candidate from filing a declaration as a party candidate and party candidate from filing as an independent]." (Emphases added.)

Pursuant to this statute, when a nominated candidate has died, moved away, or become disabled, the state committee of a political party can only appoint as substitute candidates persons who were qualified to vote in a primary as of the date for filing declarations of candidacy. Thus, if a duly qualified and nominated Republican candidate for Representative District No. 61 had died, had moved away from the district, or had become mentally or physically disabled, the Republican State Central Committee would have been unable to designate Houle as its "appointed nominee" because, under § 17–15–38, such an appointed nominee must be one who was qualified as of the original filing date for declaring his or her candidacy, and Houle was not so qualified as of that date.

In addition, § 17–14–2 provides that "[n]o person shall be eligible to file a declaration of candidacy, or be eligible to be a candidate or be eligible to be voted for or to be nominated or elected in a party primary unless such person shall, at the time of filing such declaration be qualified to vote in a primary within the district for the office which he or she seeks." As we previously held, Houle fails to satisfy this requirement also.

Therefore, how can Houle's failure to have registered as a voter in Representative District No. 61 at least thirty days before the statutory deadline for declaring his candidacy—a failure we declared "cannot be cured under our present statutory framework," *Houle,* 682 A.2d at 1386—suddenly become irrelevant by the simple expedient of his being designated as a substitute candidate by the Republican State Central Committee? And why should we now interpret the election laws to give the state committee of any party the power to designate candidates for office who were ineligible to file declarations of candidacy in the first place, especially

when the party is unable to do so when nominated candidates who were eligible and qualified have died, become disabled, or moved away? It is one thing, as in *Dahl,* to give a second chance to qualified candidates who later slip up by missing a deadline for filing their nomination papers, but it is quite another matter, as here, to allow state political parties to nominate candidates for public office who were unqualified and ineligible to declare their candidacies from the very outset of the election cycle.

Moreover, the plain wording of §§ 17–15–38 and 17–14–2 cries out for us to interpret the power of the state's political parties to appoint nominees under § 17–12–2 in *pari materia* with these other election laws concerning who can and who cannot be nominated to run for public office. *Cf. Providence Teachers Union, Local 958, American Federation of Teachers, AFL–CIO v. School Committee of Providence,* 108 R.I. 444, 449, 276 A.2d 762, 765 (1971) (statutes that "are not inconsistent with one another and which relate to the same subject matter are in *pari materia* and should be considered together so that they will harmonize with each other and be consistent with their general object and scope, even though they contain no reference to one another and were passed at different times"). In conformity with our long-standing practice, and as we said in *Houle,* 682 A.2d at 1385, we ought to read the various sections of our election laws together and harmonize them whenever it is possible to do so. Thus, any appointed candidate under § 17–12–2 should have to be qualified by the date on which all the other nominated and substituted candidates have to be qualified or, more specifically, by the date when the declaration of candidacy papers were originally due to be filed with the election authorities.

In reaching a contrary result, the majority's opinion places itself in the awkward position of following a "cafeteria plan" theory of statutory construction whereby it has to choose which of the other election laws to place on § 17–12–2's tray and which to pass over. Thus, the court dismisses the § 17–15–38 qualifications-date requirement as "not controlling" with respect to appointed nominees designated under § 17–12–2 but nonetheless selects the § 17–15–38 three-day-deadline rule in limiting the period in which this § 17–12–2 appointment power can be exercised.

Moreover, the majority's opinion gives no deference to the contrary interpretation of these laws afforded by the administrative agencies charged with implementing and enforcing them. *See, e.g., Pawtucket Power Associates Limited Partnership v. City of Pawtucket,* 622 A.2d 452, 456–57 (R.I.1993) (deference to an administrative agency's interpretations of statutes governing it "is accorded even when the agency's interpretation is not the only permissible interpretation that could be applied"). Both the State Board of Elections and the Secretary of State's office deal with these election matters on a daily basis and are familiar with the time constraints and deadlines that must be adhered to if our election laws are to work as intended. Here, both agencies urge us to abide by our original disqualification of Houle and to require that as with all other candidates, persons who are appointed under § 17–12–2 must be qualified as of the original date for declarations to be filed. Although agency interpretations of the statutes they are entrusted to administer cannot alter the plain meaning of those statutes, when, as here, the statutes are ambiguous or silent on the question presented, their administrative interpretation is entitled to considerable deference. *See Defenders of Animals, Inc. v. Department of Environmental Management,* 553 A.2d 541, 543 (R.I.1989) ("this court attributes great weight to an agency's construction of a regulatory statute when the statute's provisions are unclear").

In short, I do not believe that § 17–12–2 should be construed to overrule or to supersede the other provisions of the election laws pertaining to the qualifications of those persons who can be nominated for public office, especially when it is entirely possible and altogether desirable for us to read them together. *Cf. Langevin v. Begin,* 683 A.2d 357, 358 (R.I.1996) ("we hold that the Legislature had no intention in enacting § 41–9–4 [allowing city or town councils, by adopting a resolution, to place the question of establishing a

gambling facility on the ballot] to overrule or to supersede the provisions obtaining in each municipality for the adoption of a resolution").

**Conclusion**

For these reasons I would have denied the petition for certiorari, quashed the writ as improvidently granted, and sustained the board's decision finding Houle ineligible as a candidate in the general election for Representative in Representative District No. 61.