**AMERICA CONDOMINIUM ASSOCIATION, INC., et al.**

v.

**IDC, INC., et al.**

**No. 2001–469–Appeal.**

Supreme Court of Rhode Island.

April 8, 2005.

Michael P. DeFanti, Providence, for Plaintiff.

Sandra A. Lanni, Warwick, Daniel Goldberg, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## O P I N I O N

SUTTELL, Justice.

This case came before the Supreme Court on defendants' petition for reargument of our opinion issued on March 23, 2004 in *America Condominium Association, Inc. v. IDC, Inc.*, 844 A.2d 117 (R.I. 2004) (*America Condominium I*). By order entered on June 3, 2004, we granted reargument "in light of the importance of [the] title/ownership issue to the bar generally, as well as to the parties in this case." We further directed that reargument be "limited to the title/ownership issue raised in the petition and addressed by this Court in Section VI of the * * * [o]pinion——entitled 'Ownership of the Disputed Parcels'——and found at [844 A.2d at 131–33]." *America Condominium Association, Inc. v. IDC, Inc.*, No.2001–469–A (R.I., filed June 3, 2004) (mem.).

After considering the oral submissions of the parties at reargument and examining their memoranda, we wish to clarify certain aspects of our earlier opinion. Nevertheless, we reaffirm our holdings in their entirety.

## Standard of Review

"The Supreme Court may at its discretion reexamine its own decision within a reasonable time after rendition." *Brimbau v. Ausdale Equipment Rental Corp.*, 120 R.I. 670, 671–72, 389 A.2d 1254, 1255 (1978) (citing *Sklaroff v. Stevens*, 84 R.I. 1, 9, 120 A.2d 694, 698 (1956)). "The purpose of reargument is to afford a petitioner an opportunity to point out matters presented in the briefs and relied upon in the original argument which he believes were overlooked or misapprehended by the appellate court in reviewing the case." *Id.* at 672, 389 A.2d at 1255. "The burden is on the petitioner to demonstrate error in the court's opinion." *Id.* We conclude that in this case defendants have not met that burden.

## Discussion

A full recitation of the facts underlying this dispute is set forth in *America Condominium I*, 844 A.2d at 120–26, and need not be repeated here. Briefly stated, defendants are the successors in interest to Globe Manufacturing Co., the declarant of a condominium in Newport designated as "Goat Island South—A Waterfront Condominium." On March 3, 1988, the original declaration of condominium was amended by a document entitled, "FIRST AMENDED AND RESTATED DECLARATION OF CONDOMINIUM GOAT ISLAND SOUTH—A WATERFRONT CONDOMINIUM" (master declaration).

By the terms of the master declaration, the condominium consisted of six defined parcels: three of which contained existing residential buildings (designated as America Condominium, Capella Unit, and Harbor Houses Condominium), and three of which were undeveloped (herein referred to as the South, West, and North Units). The master declaration also purported to create master units, so-called, in five of the parcels. These "master units" were described as "the airspace above and all buildings and improvements now or hereafter located on the land * * * but excluding said land itself." The land underlying each "master unit" was designated as a master limited common element.

The master declaration also provided for "SPECIAL DECLARANT AND DEVELOPMENT RIGHTS." Specifically, it reserved to the declarant through December 31, 1994, the right to convert "the Capella Unit into a condominium containing not more than 89 Units"; the right "to construct improvements on [the West Unit] and submit [it] to a declaration of condominium, thereby creating a condominium containing not more than 8 units," or to convert the West Unit to a master common element; and the right "to withdraw the [North Unit] from the Goat Island South Condominium," the right to convert the North Unit to a master unit, and, if so converted to a master unit, "the right, through December 31, 1994, to construct improvements on the [North Unit] and submit the [North Unit] to a Declaration of Condominium, thereby creating a condominium containing not more than 315 units."

We also note that under the terms of the master declaration "the Declarant reserves the right to change the interior design and arrangement of all Master Units, to construct additional buildings and other improvements on any Master Unit and/or to alter the boundaries between Master Units by subdivision of a Master Unit into one or more Master Units or by merger of two or

more Master Units into one Master Unit * * *."

Globe Manufacturing eventually transferred its interest in Goat Island South to IDC, Inc., which, in turn, transferred its interest to IDC Properties, Inc. on October 19, 1994. Both IDC and IDC Properties, together with their president, Thomas Roos, are defendants in the case now before us. The plaintiffs are the condominium associations of America Condominium, Capella South Condominium, and Harbor Houses Condominium.

On December 29, 1994, two days before the development rights expired, IDC Properties executed and recorded a "SIXTH AMENDMENT TO FIRST AMENDED AND RESTATED DECLARATION OF CONDOMINIUM" (sixth amendment), which, by its terms, exercised declarant's development rights by "add[ing] to the Condominium" as a master unit the airspace over the land described as the North Unit.

■ As we recognized in *America Condominium I*, the Rhode Island Condominium Act, G.L.1956 § 34–36.1–1.01 (Act), "as a whole contains a strong consumer protection flavor," because of "a perceived need for additional consumer protection." *America Condominium I*, 844 A.2d at 128 (quoting *One Pacific Towers Homeowners' Association v. HAL Real Estate Investments, Inc.*, 148 Wash.2d 319, 61 P.3d 1094, 1100 (2002)). We also note the statute's clear direction that "[e]xcept as expressly provided in this chapter, provisions of this chapter may not be varied by agreement, and rights conferred by this chapter may not be waived." Section 34–36.1–1.04. The Commissioners' Comments [1]

explain with respect to this section that the Act seeks "to provide great flexibility in the creation of condominiums and, to that end, * * * permits the parties to vary many of its provisions." Section 34–36.1–1.04, Commissioners' Comment 1. "In many instances, however, provisions of the Act may not be varied, because of the need to protect purchasers, lenders, and declarants." *Id.*

## Development and Improvement Rights

The Rhode Island Condominium Act draws a distinction between "development rights" and the right to make improvements or alterations to a unit. *See* §§ 34–36.1–1.03(11) and 34–36.1–2.11.

" 'Development rights' means any right or combination of rights reserved by a declarant in the declaration to:

(A) Add real estate to a condominium,

(B) Create units, common elements, or limited common elements within a condominium,

(C) Subdivide units or convert units into common elements, or

(D) Withdraw real estate from a condominium." Section 34–36.1–1.03(11).

As the Commissioners' Comments explicate, development rights permit a declarant to retain a high degree of flexibility to respond to changing economic opportunities, or to meet the space requirements of prospective purchasers. For example, they allow a declarant to commit more land to the condominium in the event of success. On the other hand, they allow a declarant to withdraw real estate from the project and devote it to other uses should original expectations not be realized. Sec-

---

1. The official comments or Commissioners' Comments to the Uniform Condominium Act have been inserted following the corresponding sections of this chapter to provide "guidance as to the intent of the [L]egislature in adopting this chapter unless the statutory language shall clearly express otherwise in which case the statutory language shall prevail." Public Laws, 1982, ch. 329, § 3.

tion 34–36.1–1.03, Commissioners' Comment 8. Also, because they allow for the creation of units, common elements, or limited common elements, development rights permit the developer a certain degree of flexibility with respect to the division of the real estate included in the condominium. *Id.* To respond to customer needs, for example, a developer can change the number and size of units within the original condominium. *Id.* In the case before us, Globe Manufacturing, defendants' predecessor in interest, clearly reserved development rights in the master declaration. These rights, however, expired on December 31, 1994.

Distinct from development rights is the right to make improvements or alterations to units. Section 34–36.1–2.11 provides:

"Subject to the provisions of the declaration and other provisions of law, a unit owner:

(1) May make any improvements or alterations to his or her unit that do not impair the structural integrity or mechanical systems or lessen the support of any portion of the condominium;

(2) May not change the appearance of the common elements, or the exterior appearance of a unit or any other portion of the condominium, without permission of the association;

(3) After acquiring an adjoining unit or an adjoining part of an adjoining unit, may remove or alter any intervening partition or create apertures therein, even if the partition in whole or in part is a common element, if those acts do not impair the structural integrity or mechanical systems or lessen the support of any portion of the condominium. Removal of partitions or creation of apertures under this subdivision is not an alteration of boundaries."

Here, again, the Commissioners' Comments provide helpful guidance. As the comments point out, the drafters principally were contemplating improvements that would affect the inside of already completed units to allow unit owners the flexibility to make alterations according to their needs as long as the structural integrity, mechanical systems, and support of the condominium are not jeopardized. *See* § 34–36.1–2.11, Commissioners' Comments. This section emphasizes, however, that the scope and extent of these alterations are subject to the provisions of the condominium declaration. Section 34–36.1–2.11. They can, therefore, be varied by agreement.

One important distinction between development rights and the right to make improvements or alterations is that development rights are limited in time, *see* § 34–36.1–2.05(8), whereas improvement rights, subject to the provisions of the declaration, have no such temporal restraints. *See* § 34–36.1–2.11.

### Units

The core concept underlying development rights and the right to make improvements or alterations is the unit. Improvement or alteration rights can be exercised only with respect to a unit. One important development right, on the other hand, is the right to create units within an existing condominium. The Rhode Island Condominium Act provides for very limited and specific ways of creating units in a condominium, and the statute does not indicate that this process may be changed by agreement. *See* § 34–36.1–1.04.

Because of this critical connection between development rights, the right to make improvements or alterations, and the concept of the unit, we now turn to the question of whether valid units were created by the master declaration or through

IDC Properties' "exercise" of its development rights in 1994.

A condominium is created "by recording a declaration in the municipal land evidence records." Section 34–36.1–2.01. Among other things, the declaration must contain "[a] statement of the maximum number of units which the declarant reserves the right to create"; and "[a] description of the boundaries of each unit created by the declaration, including the unit's identifying number." Section 34–36.1–2.05(a)(4)(5). Section 34–36.1–2.09(a) provides further that "[p]lats and plans are part of the declaration." Moreover:

> "To the extent not shown or projected on the plats, plans of the units must show or project:
>
> (1) The location and dimensions of the vertical boundaries of each unit, and that unit's identifying number, provided, that if two (2) or more units have the same vertical boundaries one plan may be used for such units if so designated;
>
> (2) Any horizontal unit boundaries, with reference to an established datum, and that unit's identifying number; and
>
> (3) Any units in which the declarant has reserved the right to create additional units or common elements * * *, identified appropriately." Section 34–36.1–2.09(d).

Furthermore:

> "A declaration or an amendment to a declaration adding units to a condominium, may not be recorded unless all structural components and mechanical systems of the building containing or comprising any units thereby created

are substantially completed in accordance with the plans of that building, as evidenced by a certificate of completion executed by an independent registered engineer or architect which shall be recorded in the local land evidence records." Section 34–36.1–2.01(b).[2]

This was the state of the law in 1988, when defendants' predecessor in interest recorded the master declaration, which serves as the constituting document for this condominium project.

Our review of this document shows that the declarant purported to create five "Master Units" in the condominium. These are the "America Condominium" Unit, the "Capella Unit," "Development Unit # 1" ("West Unit"), the "Harbor Houses Condominium" Unit, and the "Individual Unit" ("South Unit").[3] In addition, the declarant reserved the right to exercise development rights with respect to the "Reserved Area" ("North Unit"), including the right to withdraw real estate, the right to convert the area to a "Master Unit," and the right to construct improvements on this unit, if it were created.

Only the South, West, and North Units are subject to the current dispute. Because of their different status at the time the condominium was created, we will discuss the South and West Units separately from the North Unit.

### South and West Units

■ With respect to the South and West Units, the master declaration referred to these parcels as "Master Units." It further included as an exhibit a metes

---

**2.** The Commissioners' Comments to this section underscore that the terms "structural components" and "mechanical systems," as well as "substantial completion," are terms of art that are well understood in the construction industry. *See* § 34–36.1–2.01, Commissioners' Comments 6 and 7.

**3.** We note that our earlier opinion mistakenly identified the "West Unit" as the former "Individual Unit" and the "South Unit" as the former "Development Unit # 1."

and bounds description of the parcels in question. Only with respect to the West Unit did the master declaration go into more detail about future development plans. The declarant reserved certain development rights with respect to this parcel, stating in the master declaration that "not more than 8 units" would be created therein. However, no structural components were located on either of the two parcels in 1988 that met the requirements for "substantial completion" that the Act cites as a prerequisite for recording a declaration of condominium.[4] Therefore, with respect to the South and West Units, the declarant failed to meet the conditions necessary to create units in the master declaration. Furthermore, at no time before the development rights expired on December 31, 1994, did IDC Properties or its predecessors attempt to exercise these rights with respect to the West Unit, nor did the declarant reserve any development rights in the South Unit. Therefore, because the South and West Units never were validly created units within the meaning of the Act, they were, and remain, common elements.

## Airspace Units

■ The defendants argue that Commissioners' Comment 11 to § 34–36.1–2.01 provides for the creation of units without the need to have substantially completed structures in place before a unit can be declared. Commissioners' Comment 11 to § 34–36.1–2.01 provides as follows:

"The requirement of completion would be irrelevant in some types of condominiums, such as campsite condominiums or some subdivision condominiums where the units might consist of unimproved lots, and the airspace above them, within which each purchaser would be free to construct or not construct a residence. Any residence actually constructed would ordinarily become part of the 'unit' by the doctrine of fixtures, but nothing in this Act would require any residence to be built before the lots could be treated as units."

The defendants urge us to consider our decision in *McConnell v. Wilson*, 543 A.2d 249 (R.I.1988), in conjunction with Commissioners' Comment 11. In *McConnell* we were called upon to decide whether the town clerk of South Kingstown could be directed by writ of mandamus to record a condominium declaration for a parking lot condominium. *Id.* at 249. By implication we recognized in *McConnell* that the plaintiffs had created valid "airspace units" in the proposed parking lot. *Id.* at 250. The defendants now assert that, therefore, they should have been able to declare units in the undeveloped airspaces above the land referred to as the South and West Units.

We decline to follow defendants' broad interpretation of *McConnell* and Commissioners' Comment 11 to allow for the dec-

---

4. As § 34–36.1–2.01 Commissioners' Comment 9 explains:

"The requirement of 'substantial completion' does not mean that the declarant must complete all buildings in which all possible units would be located before creating the condominium. If only some of the buildings in which units which may ultimately be located have been 'structurally' completed, the declarant may create a condominium in which he reserves particular development rights (Section [34–36.1–2.05(a)(8)])."

In such a project, only the completed units might be treated as units from the outset, and the development rights would be reserved to create additional units, either by adding additional real estate and units to the condominium, by creating new units on common elements, or by subdividing units previously created. The optional units may never be completed or added to the condominium; however, this will not affect the integrity of the condominium as originally created."

laration of undeveloped units. The units in question in *McConnell* involved parking spaces. The example given in Commissioners' Comment 11 concerns campsite condominiums. Whether a parking space or a campsite area, generally no structures will be erected in these units because their purpose is to provide temporary space for automobiles or tents and recreational vehicles, respectively. Such units essentially are complete as undeveloped, airspace units. Thus, the requirement that all structural components and mechanical systems be substantially completed indeed would be irrelevant.

In addition, as P.L. 1982, ch. 329, § 3 makes clear, the statutory language prevails over the Commissioners' Comments. Therefore, we conclude that, except in limited circumstances and except as permitted after 1991 with respect to land-only units, units in a condominium can be created only if they meet the requirements for substantial completion.[5]

## North Unit

■ With respect to the North Unit, the situation presents itself somewhat differently. In the master declaration, the declarant did not attempt to create a unit on the parcel now referred to as the North Unit. Instead, it reserved development rights with respect to what then was called the Reserved Area. IDC Properties attempted to exercise these development rights on December 29, 1994, two days before they expired, by executing and recording the sixth amendment to the declaration of condominium. In this amendment, IDC Properties attempted to create a unit in the airspace above the land described as the North Unit, while the land itself became a master limited common element. The amendment, however, complied with neither the substantial completion requirement of the Act in effect in 1988 nor the 1991 amendment providing for land-only units. Thus, IDC Properties

---

**5.** In 1991, the Rhode Island Condominium Act was amended to provide for the creation of land-only units. Section 34–36.1–2.01(b)(c), as amended by P.L. 1991, ch. 369, § 2. The statute now provides:

"(b) * * * No provision of this chapter shall be construed as prohibiting the recording of a declaration or amendment to a declaration which creates a condominium containing land only units or adds land only units to an existing condominium.

"(c) A declaration or an amendment to a declaration creating land only units shall set forth restrictions on the development of such land only units which address at a minimum the following items:

(1) Floor area square footage,
(2) Lot coverage,
(3) Height,
(4) Set backs from unit boundaries,
(5) Use, and
(6) Architectural and design standards."

Land-only units are further defined as follows:

" 'Land only units' shall mean units designated as land only units on the plats and plans which units may be comprised entirely or partially of unimproved real property and the air space above the real property. The boundaries of a land only unit are to be described pursuant to § 34–36.1–2.05(a)(5). Land only units may, but need not, contain a physical structure. The declaration may provide for the conversion of land only units to other types of units and/or common elements provided the conversion shall be effective only upon the recording of an amendment to the declaration which amendment will include new plats and plans identifying any portion of the land only unit converted to another type of unit and/or common element." Section 34–36.1–1.03(17).

If this new section allowing for land-only units applied to IDC Properties at the time it exercised its development rights for the North Unit in 1994, it would have provided defendants with a novel opportunity to create units without having commenced the construction of any buildings. The requirements set out by the statute, however, are quite strict and require detailed planning on behalf of the developer before any unit can be declared as a land-only unit.

again failed to establish a valid unit in the North Unit. Its development rights since have expired and, without a valid unit, it cannot exercise any rights to make improvements or alterations.

### Current Status of the Property

Having established that IDC Properties and its predecessors failed to create units in the South, West, and North areas of the Goat Island South Condominium, we now review the current status of the property. Article 3.1 of the master declaration provides that the Condominium's "Master Common Elements consist of all portions of the Project [ ]other than the Master Units[ ]." In addition, the master common elements include "[t]he grounds * * * not within a Master Unit, and not designated as Master Limited Common Elements herein or on the Plats and Plans."

▇ When the declarant attempted to create master units in the South, West, and North areas, these units were intended only to comprise the airspace above the land defined in these parcels. The land underneath each master unit, on the other hand, was designated as master limited common elements "allocated to the exclusive use of such Master Unit." In addition, the master declaration says that the master limited common elements are "appurtenant to, associated with or reserved for each Master Unit." The master limited common elements are thus clearly subordinate to the master units that the declarant intended to create.

We conclude, therefore, that those portions of airspace in the South, West, and North parcels that defendants and their predecessors intended to be master units are common elements because no units were created therein. The land underlying these "units" likewise is part of the common elements. Because no units were validly created, no master limited common elements appurtenant to them could be created. Consequently, these portions of the condominium always were, and remain, common elements.[6]

A unit is not created simply by describing a parcel of real estate, whether or not it be airspace only, and designating it as a unit (or a master unit) in a declaration of condominium. There also must be compliance with the Act. To hold otherwise would negate the remedial purposes of its consumer protection provisions.

We perceive the Rhode Island Condominium Act to be a careful attempt by the Legislature to strike a balance between a declarant's need for flexibility in creating a condominium and the interests of each individual unit owner in the enjoyment of his or her particular parcel of real estate. To that end, a declarant is permitted to reserve certain rights for future development, yet the unit purchaser is secured by the knowledge of what such rights are and the prescribed time limit within which they must be exercised. To adopt defendants' reasoning would thwart these salutary purposes. A declarant, by simply ascribing the status of "unit" to an undeveloped parcel of real estate, without complying with the Act's requirement of substantial completion, thereby would claim unto itself the right in perpetuity to construct any type of "improvement" consistent with applicable land use laws. Such a construc-

---

6. Commissioners' Comment 2 to § 34–36.1–3.07 explains:

"Under Section [34–36.1–2.10], a declarant may reserve the right to create units in portions of the condominium originally designated as common elements. Prior to cre-

ation of the units, title to those portions of the condominium is in the unit owners. However, under Section [34–36.1–3.07(b)], the developer is obligated to pay all of the expenses of (including real estate taxes properly apportionable to) that real estate."

tion of the Act runs counter to the concept of common ownership that is the fundamental principle of a condominium.[7] We do not believe that to be the intent of the Legislature, and we decline to so interpret the Act.

■ With the benefit of hindsight, we reconsider our statement in *America Condominium I* that title to the disputed parcels vested in the individual unit owners upon expiration of the defendants' development rights. These master units, so-called, always were common elements, subject to the exercise of said development rights, and title rested with the unit owners in common ownership from the creation of the condominium.

For the reasons set forth herein, the relief sought in the defendants' petition for reargument is denied. The papers in this case are remanded to the Superior Court for proceedings in accordance with our opinion in *America Condominium I*.

Justice ROBINSON did not participate.

---

**7.** Commissioners' Comment 5 to § 34–36.1–1.03 provides:

> "Definition (7), 'condominium,' makes clear that, unless the ownership interest in the common elements is vested in the owners of the units, the project is not a condominium. Thus, for example, if the common elements were owned by an association in which each unit owner was a member, the project would not be a condominium. Similarly, if a declarant sold units in a building but retained title to the common areas, granting easements over them to unit owners, no condominium would have been created. Such projects have many of the attributes of condominiums, but they are not covered by this Act."