**Supreme Court**

No. 2014-199-Appeal.

No. 2014-200-Appeal.

(NC08-504)

IDC Properties, Inc., et al.                :

v.                :

Goat Island South Condominium          :
    Association, Inc., et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2014-199-Appeal.
No. 2014-200-Appeal.
(NC08-504)

IDC Properties, Inc., et al.          :

v.                    :

Goat Island South Condominium     :
Association, Inc., et al.

Present:  Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**   The plaintiffs in this consolidated appeal, IDC Properties, Inc. (IDC) and Thomas Roos (Roos) (collectively, plaintiffs),  appeal from an entry of summary judgment in favor of the defendants, Goat Island South Condominium Association, Inc. (GISCA), America Condominium Association, Inc. (America), Capella South Condominium Association, Inc. (Capella), Harbor Houses Condominium Association, Inc. (Harbor Houses), and Warren Galkin, Neal Smith, Cornelius Bond, Thomas O'Brien, Daniel Kinder, Shirley Mintz, Raymond Morrisette, and Reeder Fox, individually (collectively, defendants), on their five-count complaint in this ongoing chronicle surrounding the condominiums located at Goat Island South – A Waterfront Condominium (GIS Condominium) in Newport, Rhode Island. Likewise, Harbor Houses appeals from an entry of summary judgment in favor of GISCA on its cross-claim.  This matter came before the Supreme Court on November 4, 2015, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided.   After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown.  Accordingly,

-1-

we shall decide the matters at this time without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

We are rather familiar with the history of this case, as we have addressed various issues involving the parties on three prior occasions. Our first instance was in America Condominium Association, Inc. v. IDC, Inc., 844 A.2d 117 (R.I. 2004) (America I), which includes a full recitation of the facts underlying the initial dispute between the parties. As a refresher, in 1988, "Globe Manufacturing Co. (Globe), predecessor in interest of [plaintiffs], recorded a declaration of condominium designated as 'Goat Island South—A Waterfront Condominium' * * * in the Land Evidence Records of the City of Newport." Id. at 120. The condominium area was located across twenty-three acres on scenic Goat Island. At the time, Roos was Globe's director. The condominium area included "six defined parcels," three of which were residential sub-condominiums with 154 total units combined: America, a forty-six-unit apartment building; Capella, an eighty-nine-unit apartment building; and Harbor Houses, which consists of nineteen waterfront, townhouse-style homes. Id. The other three parcels were undeveloped and were dubbed the West Development Unit, the South Development Unit, and the Reserved Area/North Development Unit. GIS Condominium is the master condominium, which was designed to manage the common elements shared by the sub-condominiums. Globe eventually transferred its interests in the GIS Condominium to IDC, Inc., which later transferred its interests to IDC.

In America I, America, Capella, and Harbor Houses filed an action against Roos, IDC, and IDC, Inc., asserting that Roos and IDC failed to exercise their developmental rights as to the undeveloped units, and, as a result, those undeveloped areas were owned by America, Capella,

and Harbor Houses. America I, 844 A.2d at 125. In addition, they asserted that the voting procedures under the GIS first amended restated master declaration (FAR) were invalid under the Rhode Island Condominium Act (the act), G.L. 1956 chapter 36.1 of title 34. America I, 844 A.2d at 125. While the Superior Court agreed that the voting procedures under the FAR were invalid and that the development rights of Roos and IDC had expired, America, Capella, and Harbor Houses nonetheless appealed the grant of partial summary judgment in their favor on the grounds that they should have also been granted title to the undeveloped parcels. Id. We affirmed the Superior Court's ruling, but also held that "the hearing justice should have declared that title to the disputed property vested in the individual unit owners * * *." Id. at 133. The case was ultimately reargued, and, following the rehearing, we clarified that the undeveloped parcels had always been common elements owned by the individual condominium unit owners from the creation of the GIS Condominium. America Condominium Association, Inc. v. IDC, Inc., 870 A.2d 434, 443 (R.I. 2005) (America II).

Following our decisions in America I and America II, the condominium unit owners crafted a second amended restated master declaration (SAR), which, in 2007, nearly 80 percent of the unit owners voted to adopt. The basic structure remained the same—that is, GIS Condominium continued to serve as the master condominium and America, Capella, and Harbor Houses continued as sub-condominiums with their own declarations—but the ownership interests of the common elements were reallocated among the unit owners to include the undeveloped units in accordance with our decisions in America I and America II. The SAR also added a review process for proposed alterations to the Harbor Houses units.

Then came Sisto v. America Condominium Association, Inc., 68 A.3d 603 (R.I. 2013). In that case, the plaintiff owned a unit in the Harbor Houses, but wanted to expand the size of his

unit, thereby encroaching upon the surrounding land, which was "designated as a limited common element—meaning that it is 'reserved for the use by one or more but fewer than all [u]nits, and intended for the exclusive use of such [u]nits.'" Id. at 606. The plaintiff argued that the plain terms of the SAR did not require him to obtain consent from the other 153 unit owners in the GIS Condominium community to expand his unit. Id. at 612. We agreed that the terms of the SAR did not require unanimous consent, but we also said that the act's requirement of unanimous approval from all unit owners for any expansion of a unit onto common elements superseded any contradictory provision of the SAR. Id. at 612-14. Thus, despite what the SAR said, we determined that the plaintiff needed to get unanimous approval from the other 153 unit owners before lawfully expanding his unit. Id. at 614.

In the midst of all of this litigation, in 2008 plaintiffs filed the instant action, seeking to invalidate the overarching GIS Condominium. This would result in America, Capella, and Harbor Houses moving forward as individual, independent condominiums "of their own accord." They sought a declaratory judgment that the original master declaration creating the GIS Condominium was invalid and therefore land that was not part of the sub-condominiums— namely, the common elements—was owned by plaintiffs (count 1); that the FAR was invalid (count 2); and that the SAR was void ab initio (count 3). The plaintiffs also alleged that the individually named GIS executive board defendants breached the covenant of good faith and fair dealing (count 4) and breached their duty of ordinary and reasonable care (count 5) by unilaterally adopting the invalid structure set forth in the SAR.

GISCA and the individual board members moved for summary judgment on all counts, which America and Capella joined; plaintiffs objected and cross-moved for summary judgment on counts one through three. Harbor Houses strategically jumped ship and amended its answer

to file a cross-claim against GISCA, also seeking a declaratory judgment that the SAR was invalid, and thus the GIS Condominium is not a valid condominium. Harbor Houses then moved for summary judgment on its cross-claim.

On February 10, 2014, the hearing justice heard oral arguments from both sides on the motions for summary judgment. GISCA argued that plaintiffs' first two claims were barred by res judicata and estoppel by deed, that the SAR was valid, and that the claims against the individual board members were without merit. Relying on a portion of our decision in Sisto, Harbor Houses argued that the SAR was invalid under the act because it does not define boundaries for the individual condominium units. The plaintiffs also filed a motion to amend their complaint to add a claim to rescind the SAR due to mutual mistake (count 6), arguing that the parties that adopted the SAR thought that it created "a 3-unit condominium consisting of 3 airspace units," but that our decision in Sisto had rendered this belief incorrect.

On March 27, 2014, the hearing justice issued a bench decision on the summary judgment motions and plaintiffs' motion to amend. He first denied plaintiffs' motion to amend, finding that the amendment was futile because they failed to allege fraud, misrepresentation, violence, or undue influence as a cause of the alleged mutual mistake. The hearing justice then granted summary judgment in favor of defendants on all plaintiffs' claims. He ruled that counts 1 and 2 of plaintiffs' claims were barred by res judicata because they could have been raised in the America litigation. He further indicated that the claims were barred by the doctrine of estoppel by deed because plaintiffs sold condominium units under the original and FAR declarations and warranted that the units were part of a valid condominium when they were sold, and were therefore barred from subsequently denying the validity of the condominium. The

hearing justice also determined that the SAR did not violate our decisions in America I and America II and thus was valid.

Moreover, the hearing justice rejected Harbor Houses' reliance on Sisto for its argument that the SAR is invalid because it does not contain units or unit boundaries, and therefore does not create a valid condominium. Rather, he concluded that Harbor Houses took language from Sisto out of context, and that the SAR properly set up a structure of three sub-condominium units under a master condominium by incorporating the boundaries of the individual units by reference to each sub-condominium's respective declaration. Therefore, the hearing justice also granted summary judgment against Harbor Houses on its cross-claim.

As to plaintiffs' assertion that the reallocation of common element ownership set forth in the SAR required unanimous approval under the act, the hearing justice countered that unanimous approval was not required because the SAR used the same formula established by the original and FAR declarations to calculate ownership of the common elements. Lastly, the hearing justice found no basis for plaintiffs' claims against the individual board members given that the action taken to adopt the SAR was through the members of GIS, and not the executive board members individually.

Judgment was entered on April 21, 2014. Both plaintiffs and Harbor Houses filed timely notices of appeal.

## II

### Standard of Review

"We review a hearing justice's 'grant of summary judgment de novo, employing the same standards and rules used by the hearing justice.'" Faella v. Chiodo, 111 A.3d 351, 357 (R.I. 2015) (quoting Rhode Island Joint Reinsurance Association v. Santana-Sosa, 92 A.3d 192,

196 (R.I. 2014)). "Summary judgment is appropriate when the hearing justice, after considering the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, finds no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." Peerless Insurance Co. v. Luppe, 118 A.3d 500, 505 (R.I. 2015) (quoting Miller v. Metropolitan Property and Casualty Insurance Co., 111 A.3d 332, 339 (R.I. 2015)).

"Additionally, 'the decision to grant or to deny a motion to amend a complaint is confided to the sound discretion of the [hearing] justice.'" Lomastro v. Iacovelli, 56 A.3d 92, 94 (R.I. 2012) (quoting Harodite Industries, Inc. v. Warren Electric Corp., 24 A.3d 514, 529 (R.I. 2011)). "Accordingly, we afford great deference to the [hearing] justice's ruling on a motion to amend, and we will not disturb [that] ruling unless the [hearing] justice committed an abuse of discretion." Id. (quoting Harodite Industries, Inc., 24 A.3d at 529).

# III

## Discussion

This time around on appeal, plaintiffs contend that the hearing justice erred in applying the doctrines of res judicata and estoppel by deed to bar their claims attempting to invalidate various versions of the GIS Condominium declaration and as to ownership of the common elements. Furthermore, plaintiffs argue that the members of the board were personally liable for intentionally adopting an illegal declaration. Lastly, plaintiffs claim it was error for the hearing justice to deny their motion to amend their complaint to include a claim to rescind the GIS Condominium declaration due to mutual mistake.[1] Harbor Houses also appeals from the entry of

---

[1] At oral argument, plaintiffs' counsel—who, we note, entered into this matter at the eleventh hour—raised several arguments that were not presented to the hearing justice. In accordance

summary judgment in favor of GISCA on its cross-claim, maintaining that the SAR is invalid and that the GIS Condominium is not a valid condominium.

## A. Res Judicata and Estoppel by Deed

The plaintiffs first claim that it was error for the hearing justice to apply the doctrine of res judicata to its claim for ownership over the common elements and to its claims that the original and FAR declarations are invalid. They argue that none of the requirements of res judicata have been met because the issues are not identical to those litigated in America I and America II, they did not arise out of the same transaction, the parties are not identical, and no final judgment has been entered. We disagree.

"The doctrine of res judicata bars the relitigation of all issues that 'were tried or might have been tried' in an earlier action." Torrado Architects v. Rhode Island Department of Human Services, 102 A.3d 655, 658 (R.I. 2014) (quoting Huntley v. State, 63 A.3d 526, 531 (R.I. 2013)). "The doctrine serves as a bar to a second cause of action where there exists: (1) 'identity of parties'; (2) 'identity of issues'; and (3) 'finality of judgment in an earlier action.'" Id. (quoting Huntley, 63 A.3d at 531). "The principle underlying the rule of [res judicata] * * * is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." Id. at 659 (quoting Huntley, 63 A.3d at 532).

First, plaintiffs argue the absence of an identity of parties because while IDC and Roos were parties to the litigation in America I and America II, in those cases they were parties in their capacities as "successor declarants" and a board member, respectively, and here, they are

---

with our well-settled raise-or-waive rule, these arguments are deemed to be waived. See, e.g., Warwick Housing Authority v. McLeod, 913 A.2d 1033, 1037 (R.I. 2007).

bringing suit as unit owners.[2]  Although creative, this argument is nevertheless faulty. "Determining whether there is 'identity of parties' requires resolving 'whether the parties to this second action are identical to or in privity with the parties involved in the [prior action].'''" Reynolds v. First NLC Financial Services, LLC, 81 A.3d 1111, 1115 (R.I. 2014) (quoting E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey, 635 A.2d 1181, 1186 (R.I. 1994)).  "A party to an action has been defined as '[a] person who is named as a party to an action and subjected to the jurisdiction of the court * * *.'" Id. (citing E.W. Audet & Sons, Inc., 635 A.2d at 1186-87)).  IDC and Roos were both named parties in America I and America II, and there is no question that they were subject to this Court's jurisdiction.   The plaintiffs simply cannot avoid the fact that they were both parties to the prior litigation by asserting that they now represent different interests.

Next, the issue of ownership over the common elements within the GIS Condominium was clearly litigated in America I, 844 A.2d at 131-33, and was the primary focus of our clarified decision in America II, 870 A.2d at 443, where we said that title to the common elements had always been with individual unit owners, subject to any development rights.  Furthermore, even though the validity of the original and FAR declarations was not directly litigated in America I and America II, plaintiffs' claims are still barred because we have adopted the transactional approach to the "identity of issues" component.  See Torrado Architects, 102 A.3d at 658.  That approach "provides that a claim that is extinguished by a final judgment 'includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'"  Id. (citing Restatement (Second) Judgments § 24(1) at 196 (1982)).  Here, the original and FAR declarations clearly

---

[2] Roos owns one condominium unit in Capella.  IDC owns two condominium units in Capella and one unit in Harbor Houses.

arose from the same transaction between the parties that was the focus of <u>America I</u> and <u>America II</u>, i.e., the GIS Condominium. The plaintiffs should have raised any issues with the original and FAR declarations then, and we recognized that neither had been challenged at that time. <u>See America I</u>, 844 A.2d at 120 n.4 (noting that neither the original nor the first amended declaration had been challenged).

Last, contrary to plaintiffs' assertion, there was a valid final judgment. On May 27, 2005, the Superior Court entered a separate and final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure[3] following <u>America I</u> and <u>America II</u>. While there may still be issues lingering in the <u>America</u> litigation (which, if any, are not pertinent to this appeal), there has at least been a final judgment entered following our decisions in <u>America I</u> and <u>America II</u>, which is all that is relevant to our <u>res judicata</u> analysis today.

Any claims of ownership that plaintiffs had to the common elements of the GIS Condominium, as well as their grievances with the original and FAR declarations, should have been raised in the prior litigation. As a result, plaintiffs cannot assert those claims now.

We also agree with the hearing justice that plaintiffs' first two claims are alternatively barred by the doctrine of estoppel by deed. "Generally, the doctrine of estoppel by deed provides that equity will not permit a grantor, or one in privity with him or her, to assert anything in derogation of an instrument concerning an interest in real or personal property as against the grantee or his or her successors." 28 Am. Jur. 2d <u>Estoppel and Waiver</u> § 5 at 469 (2011). In

---

[3] Rule 54(b) of the Superior Court Rules of Civil Procedure provides, in relevant part, that:
"When more than one (1) claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one (1) or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

-10-

short "[a]n estoppel may be said to arise when a person executes some deed, or is concerned in or does some act, either of record or in pais, which will preclude him from averring anything to the contrary." Burke v. Barnum & Bailey, 40 R.I. 71, 77, 99 A. 1027, 1029 (1917) (quoting 10 Ruling Case Law, 675).

Here, plaintiffs and their predecessors in interest (i.e., IDC, Inc. and Globe) marketed and sold condominium units under both the original and FAR declarations, and warranted good title to the common elements to which they now claim ownership. Consequently, under the doctrine of estoppel by deed, they may not now proclaim that these declarations, which governed the units that they sold, are invalid. The hearing justice stated it best: "[p]laintiffs may not execute and deliver warranty deeds to purchasers of an interest in a condominium development, only to assert some 20 years later that the condominium structure never existed." For the same reason, they cannot now claim ownership of the common elements or seek to invalidate the original declaration or the FAR. Thus, plaintiffs' first two claims are barred under the doctrine of estoppel by deed as well.

## B. The SAR

The plaintiffs also claim that the SAR is invalid. They argue that the allocation of voting interests in the SAR violates the act, that the SAR adopts the same structure from the original declaration and the FAR we deemed illegal in the America litigation and Sisto, and that the SAR was not adopted by unanimous consent as required by the act. Similarly, Harbor Houses argues that the SAR is invalid in light of our decision in Sisto. We disagree with each assertion and conclude that the SAR is valid.

The plaintiffs' first point of contention with the SAR is that it "illegally allocates the voting interest in the GIS Condominium" among the 154 individual condominium unit owners.

According to plaintiffs, this is in contravention of § 34-36.1-1.03(2) of the act, which defines "allocated interests" as an "undivided interest in the common elements, the common expense liability, and votes in the association allocated to each unit." The plaintiffs read the act as prohibitive of dividing the sub-condominium's voting interest among its individual unit owners. However, the SAR employs precisely the type of voting scheme we called for in America I. In that case, we invalidated a previous voting structure that allowed only a board of representatives of the three sub-condominium units to vote on amendments to the declaration, stating that "[u]nder the act, unit owners are given the right to vote upon any amendments to special declarant rights * * *." America I, 844 A.2d at 130. Since we found it to be clear under the act "that the owner of a sub-condominium unit constitutes a unit owner[,]" id., it necessarily follows that these owners are afforded a vote. Any voting scheme shutting them out would "deprive[] the individual unit owners of their statutory right to give consent." Id. The voting scheme in the SAR is directly responsive to our holding in the America litigation and, thus, is valid.

Similarly, plaintiffs contend that unanimous consent from the unit owners was required to adopt the SAR because it altered the allocation of interest of the common elements. Section 34-36.1-2.17(d) requires unanimous consent from the unit owners as to any amendment that, inter alia, "change[s] * * * the allocated interests of a unit." However, as the hearing justice pointed out, the interest of the unit owners was merely adjusted to include the common elements using the same formula set out in the original and FAR declarations. The unit owners each got the same percentage share as they did under the original and FAR declarations; there was just more to apportion among them. Thus, there was no change to the allocated interests requiring unanimous consent of the unit owners, and the amendment passed with votes well in excess of the 67 percent required by the act. See § 34-36.1-2.17(a).

Next, plaintiffs argue that the SAR fails for lack of units following our decisions in America I and America II, because in those cases we stated that the undeveloped north, south, and west air space units were not valid units. Specifically, plaintiffs contend that the condominium fails under § 34-36.1-2.01(b) of the act, which requires that units be "substantially completed" before a condominium declaration is filed. To be sure, we did say that the undeveloped north, south, and west air space units were not units, thus leading to our eventual conclusion that they were part of the common elements. America II, 870 A.2d at 442. However, America, Cappella, and Harbor Houses were completed units at the time the SAR was filed, so plaintiffs' argument as to this point fails as well.

Harbor Houses makes a similar argument in support of its cross-claim, namely that our holding in Sisto provides that the SAR does not describe valid units and boundaries as required by the act. It cites § 34-36.1-2.05(a)(5) of the act, which provides that a condominium declaration must contain "[a] description of the boundaries of each unit created by the declaration[.]" In essence, Harbor Houses wants us to declare that the GIS Condominium is essentially a homeowner's association that manages the property. However, Harbor Houses' view of our holding in Sisto misses the mark. Indeed, in Sisto, 68 A.3d at 613, we did say that the master declaration "does not appear to include a specific definition of a unit[.]" But, we went on to say that "§ 1.18 [of the declaration] provides that a [GIS Condominium] unit refers to each of the three sub-condominiums—the America, Capella, and Harbor Houses Condominiums" and that "§ 1.27 [of the declaration] also states that a 'unit owner' is the 'owner of a [r]esidence [u]nit'—meaning the owner of a unit contained within one of the three sub-condominiums." Sisto, 68 A.3d at 613. While the declaration does not specifically define a unit, it identifies a unit both by referencing the sub-condominiums and the boundaries of units within the sub-

condominiums. Our statement in <u>Sisto</u> that the master declaration did not include a specific definition of a unit by no means purported to declare that the declaration did not contain a description of the boundaries of each unit in contravention of the act. Harbor Houses' opportunistic cross-claim is without merit.

We note that the bulk of the SAR is identical to the original and FAR declarations, and the only changes—which plaintiffs and Harbor Houses now strategically attack to get another proverbial bite at the apple—adapt to our holdings in <u>America I</u> and <u>America II</u>. In sum, we discern no issue with the validity of the SAR.

### C. Claims Against the Individual Board Members

Next, plaintiffs argue that the hearing justice improperly granted summary judgment on their claims against the individual GIS board members. The plaintiffs contend that the board members "knowingly recorded a document that purported to create an illegal condominium that disenfranchised the interests of a minority group of sub-condominium unit owners * * * and that was adopted by less than unanimous consent in contravention of the [a]ct * * *."

However, plaintiffs' claims against the individual board members lack merit because, as discussed above, the SAR is valid and unanimous consent was not required. Furthermore, the action taken to adopt the SAR was by the members of GIS, not the individual board members, so there is no basis on this record for individual liability against the board members. Accordingly, summary judgment in favor of the board members on these claims was appropriate.

### D. Plaintiffs' Motion to Amend

Last, plaintiffs claim that the hearing justice erred in denying their motion to amend their complaint to add a claim to rescind the SAR on the grounds of mutual mistake. The plaintiffs assert that the motion, although presented late in the game, was not prejudicial to defendants and

did not require an allegation of fraud, misrepresentation, violence, undue influence, or the like to add a claim for mutual mistake.

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires * * *.'" Lomastro, 56 A.3d at 95 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." Id. (quoting Foman, 371 U.S. at 182). However, we have recognized that a number of reasons—such as undue delay, bad faith, undue prejudice to the opposing party, or, most relevant to this case, futility of the amendment—may nonetheless warrant the denial of a motion to amend. Id. "Of course, the grant or denial of an opportunity to amend is within the discretion of the [hearing justice]." Id. (quoting Foman, 371 U.S. at 182).

The hearing justice denied plaintiffs' motion to amend because it was futile, and we cannot say he abused his discretion in so doing.[4] The circumstances do not indicate that there was a mutual mistake in adopting the SAR, and for that reason, we agree that plaintiffs' amendment would be futile.

"[A] mutual mistake is one that is 'common to both parties wherein each labors under a misconception respecting the same terms of the written agreement sought to be canceled.'" McEntee v. Davis, 861 A.2d 459, 463 (R.I. 2004) (quoting Rivera v. Gagnon, 847 A.2d 280, 284 (R.I. 2004)). "[I]t is not merely the existence of common error that creates mutual mistake.

---

[4] The hearing justice reasoned that plaintiffs' amendment would be futile because they failed to allege any type of "fraud, misrepresentation, violence, undue influence, or the like," and thus could not make out a claim for rescission due to mutual mistake under the Rule 12(b)(6) of the Superior Court Rules of Civil Procedure standard. Although we ultimately use different reasoning to arrive at the same conclusion, we pause to note that "[w]e have long held that this Court can affirm the judgment of the Superior Court on grounds not actually relied upon by the trial court to justify its ruling." Moseley v. Fitzgerald, 773 A.2d 254, 258 (R.I. 2001) (quoting State v. Lynch, 770 A.2d 840, 847 (R.I. 2001)).

Instead, 'the parties' intent is a determinative factor.'" Id. (quoting Nunes v. Meadowbrook Development Co., 824 A.2d 421, 425 (R.I. 2003)).

The plaintiffs argue that the SAR was adopted by the unit owners and the members of GIS under the "mistaken * * * belief that they had adopted a three-GIS [u]nit condominium-within-a-condominium structure"; that is, "[i]t was the unit owners' express understanding that none of the sub-condominium units constituted units of the GIS Condominium under the SAR * * * when they voted on it." However, there was no mutual mistake among the parties when they adopted the SAR. In fact, by the plaintiffs' own assertion, the parties were actually on the same page as to the structure set forth in the SAR; they simply both ran the risk that this Court might interpret that structure differently. This type of misunderstanding is not what the doctrine of mutual mistake was meant to remedy. It is not the error as to the parties' understanding of the structure that is determinative here; rather, it is the fact that both parties intended to adopt the same structure, regardless of whether it was later found to be problematic. Given that there is no indicia of mutual mistake surrounding the adoption of the SAR, the hearing justice did not abuse his discretion by denying the plaintiffs' motion to amend on the grounds of futility.[5]

---

[5] We further note that the amendment would also be futile given plaintiffs' failure to join indispensable parties. General Laws 1956 § 9-30-11 of the Uniform Declaratory Judgments Act provides in pertinent part that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Here, the condominium unit owners who voted on the SAR, and were allegedly mistaken as to its provisions, clearly have an interest that would be affected by the declaratory judgment plaintiffs are seeking. Thus, their failure to join the unit owners in this action renders the amendment futile. See Burns v. Moorland Farm Condominium Association, 86 A.3d 354, 358-60, 360 (R.I. 2014) (holding that failure to join indispensable parties in a declaratory judgment action is "fatal and that the judgment is null and void").

-16-

**IV**

**Conclusion**

Some sixteen years and four appeals later, "[w]e are more than persuaded that the [parties to this case] have had their day in court—and then some." Palazzo v. Alves, 944 A.2d 144, 155 (R.I. 2008) (quoting Northern Trust Co. v. Zoning Board of Review of Westerly, 899 A.2d 517, 520 (R.I. 2006) (mem.)). "The time has come for this litigation to end." Id. (quoting Northern Trust Co., 899 A.2d at 520). For the reasons set forth in this opinion, we affirm the judgment of the Superior Court in all respects. The papers in this case shall be returned to the Superior Court.

Justice Robinson did not participate.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** IDC Properties, Inc., et al. v. Goat Island South Condominium Association, Inc., et al.

**CASE NO:** No. 2014-199-Appeal.
No. 2014-200-Appeal.
(NC08-504)

**COURT:** Supreme Court

**DATE OPINION FILED:** December 14, 2015

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**WRITTEN BY:** Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:** Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Plaintiffs: Stephen J. McGillivray, Esq.
Edmund A. Allcock, Esq.

For Defendants: William R. Grimm, Esq.