**Supreme Court**
No. 2015-257-M.P.
(Dissents begin on pages 2 & 5)

Raymond D. Tempest, Jr.       :

v.            :

State of Rhode Island.       :

**O R D E R**

Before this Court is the state's petition to reargue pursuant to Article I, Rule 25 of the Supreme Court Rules of Appellate Procedure.[1] The thrust of the state's petition merely serves to reiterate its position that the former prosecutor did not deliberately fail to disclose Carrier's March 1992 statements and disagrees with the majority that the statements were material under Brady v. Maryland, 373 U.S. 83 (1963). However, the state fails to identify any issues that this Court may have overlooked, nor does it identify any issues upon which this Court was either legally or factually incorrect. Rather, as Tempest's reply aptly points out, the state's petition essentially rehashes the arguments it previously made both in its written brief and at oral

---

[1] A review of this Court's recent jurisprudence, spanning the last twenty years, reveals the infrequency with which we grant reargument petitions. Indeed, the last time we granted reargument was in 2004. See American Condominium Association, Inc. v. IDC, Inc., 870 A.2d 434 (R.I. 2005). "The purpose of reargument is to afford a petitioner an opportunity to point out matters presented in the briefs and relied upon in the original argument which he believes were overlooked or misapprehended by the appellate court in reviewing the case." Id. at 436 (quoting Brimbau v. Ausdale Equipment Rental Corp., 120 R.I. 670, 672, 389 A.2d 1254, 1255 (1978)). The instant petition does not satisfy those criteria. Moreover, this case falls outside the narrow parameters that might otherwise justify a grant of reargument: where this Court sits evenly divided with four justices and a fifth member is later assigned to hear the case. See, e.g., Newport Court Club Associates v. Town Council of Middletown, 800 A.2d 405, 409 n.3 (R.I. 2002); Glaude by Stephenson v. Continental Insurance Co., 719 A.2d 856, 857 (R.I. 1998); State v. Brown, 709 A.2d 465, 467 (R.I. 1998); Rocha v. State, 705 A.2d 965, 966 (R.I. 1998); Hoffman v. McLaughlin Corp., 703 A.2d 1107, 1009 (R.I. 1997); Almacs, Inc. v. Porreca, 702

argument. Even the state's own characterization of its grievance—that this Court "misapprehended the <u>force</u> of [its] contention"—illustrates the petition's shortcomings (emphasis added).

In all due respect to both dissents to this order, all of the arguments made by both parties were thoroughly vetted by each member of this Court, as evidenced by the fact that this case produced three separate (and extraordinarily thorough) opinions. The state presents no legal or factual error committed by this Court warranting additional review. Simply put, the state just disagrees with the majority's conclusion.

Given that the state does not point to any legal or factual errors in the majority's opinion, but rather merely attempts to rehash the arguments already considered by this Court in the original appeal, the state's petition to reargue this case is hereby denied.[2]

**Chief Justice Suttell, dissenting.** Although I concurred with the Court's affirmance of the Superior Court judgment vacating Raymond Tempest, Jr.'s conviction, I did so for reasons other than those relied upon by the majority. For the reasons set forth in my separate opinion, I believe that the Superior Court justice's decision to vacate the conviction based upon the state's failure to disclose the pretrial statements of Donna Carrier was predicated upon an incomplete analysis under the doctrine set forth in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Lerner v. Moran</u>, 542 A.2d 1089 (R.I. 1988). <u>See</u> <u>Tempest v. State</u>, 141 A.3d 677, 687-88 (R.I. 2016) (Suttell, C.J., concurring in the result and dissenting in part).

---

A.2d 892, 893 (R.I. 1997); <u>State v. Ballard</u>, 699 A.2d 14, 15 (R.I. 1997); <u>Holmes v. Begin</u>, 684 A.2d 1141, 1144 (R.I. 1996).

[2] Indeed, there is nothing in the state's petition (or Tempest's reply) to suggest that, were this case to be reargued by the parties and subsequently reexamined by this Court, the result would be any different.

As neither the hearing justice nor the majority concluded that the prosecution's failure to disclose the statements was for the purpose of obstruction, the Court's opinion seemingly stands for the proposition that a defendant need show only "a considered decision to suppress" to be entitled to a new trial. See State v. Wyche, 518 A.2d 907, 910 (R.I. 1986). This is a departure from our long-standing jurisprudence and should be revisited. See id. ("The prosecution acts deliberately when it makes 'a considered decision to suppress * * * for the very purpose of obstructing' or where it fails 'to disclose evidence whose high value to the defense could not have escaped * * * [its] attention.'") (quoting United States v. Keogh, 391 F.2d 138, 146-47 (2nd Cir. 1968)).

The Court's opinion also rests upon the second prong of the deliberate nondisclosure analysis, i.e., that the "high value" of the Carrier statements could not have escaped the prosecution's attention. In doing so, the majority, I believe, has overlooked or misapprehended significant aspects of the record. Most fundamentally, the majority reached its conclusion notwithstanding the lack of any credibility determinations by the hearing justice with respect to the testimony of the former prosecutor. Indeed, the hearing justice, having found (erroneously in my view) the first prong to have been satisfied, never discussed the alternative high-value-of-the-evidence predicate.

The only statements in the hearing justice's decision concerning this evidence that may fairly be considered factual rulings are: (1) that the former prosecutor's note, "too late, don't volunteer new info, will cause big problems," constituted a considered decision to suppress; (2) that "the protean nature of Ms. Carrier's testimony was * * * necessarily harmful to the [s]tate's case"; and (3) that the former prosecutor "evidently sought to protect Ms. Carrier from additional impeachment." The use of the word "evidently" certainly suggests that the hearing justice was not at all convinced of the high value of Carrier's statements to the defense.

- 3 -

Be that as it may, the majority determined "that the 'high value' of Carrier's new statements to the defense could not have escaped the former prosecutor's attention * * *." Tempest, 141 A.3d at 683. This conclusion, in my judgment, overlooks the wealth of impeachment evidence that was in the defendant's possession at the time of trial.

One of the statements at issue was Carrier's assertion that, on the day of the murder, Tempest's children were excited about getting a puppy. At the time of the trial, however, the defense was in possession of Carrier's grand jury testimony that she had observed Tempest leave her apartment building on the day of the murder to pick up a puppy. Significantly, it was undisputed at the time of trial that Carrier was mistaken about what she had observed on the day of the murder as Tempest had not yet moved into her apartment building. When placed in proper context, therefore, I believe that the "high value" of Carrier's statement concerning Tempest's children's excitement could easily have escaped the prosecution's attention. See Lerner, 542 A.2d at 1092 ("Such [high value] cases rarely present a problem as to 'the degree of prejudice which must be shown'; almost by definition the evidence is highly material.") (quoting Keogh, 391 F.2d at 147).

The majority also reasoned that Carrier's statement that Tempest's brother, Gordon Tempest, hid the murder weapon in an effort to conceal it to protect his brother "certainly could have been used by the defense to undermine her already shaky credibility." Tempest, 141 A.3d at 685. Thus, the majority concluded, the high value of her statement could not have escaped the prosecution's attention. This conclusion, however, overlooks the great lengths Tempest went to at trial to exclude any evidence concerning his brother's involvement in the concealment or "cover up" of the murder. As this Court wrote in Tempest's direct appeal from conviction:

> "The defendant next contends that the trial justice repeatedly
> erred by admitting evidence of an alleged 'cover up' of defendant's

- 4 -

involvement in the crime by certain members of the Woonsocket police department and defendant's relatives. According to defendant, this evidence was never connected to him, was only 'negligibly relevant,' and as such was extremely and unfairly prejudicial to him." State v. Tempest, 651 A.2d 1198, 1213 (R.I. 1995).

It can hardly be said that the high value of Carrier's statement to the defense would have been readily apparent.

Accordingly, I would grant the state's petition to reargue and urge the majority to reconsider the Brady claim relating to the maroon car as a basis for affirming the Superior Court judgment.


**Justice Goldberg, dissenting.** I also dissent in this case. I join the Chief Justice in concluding that this decision is a radical departure from our settled jurisprudence regarding a violation of the Brady doctrine and may very well constitute new law that this Court and the trial bench will struggle with for many years to come. Rather than face up to the fact that the trial justice wholly overlooked the second and critical factor in State v. Wyche, 518 A.2d 907, 910 (R.I. 1986) that the prosecutor's nondisclosure must not only be deliberate, but must be found to have been "'for the purpose of obstructing,'" the majority persists in ignoring this legal error, thus compounding the error such that the bench and bar are left wondering what is the law? Are the factors set forth in Wyche still part of this state's jurisprudence? If not, and the majority has changed the law, the opinion should reflect this circumstance.

As I articulated in my dissent in this case, in affirming the trial justice, the majority impermissibly engaged in factfinding. The majority concluded that "the former prosecutor's own words—'don't volunteer'—indicate a considered decision not to offer the new information to the defense." Tempest v. State, 141 A.3d 677, 683 (R.I. 2016). Under Wyche, a prosecutor's considered decision to suppress must also be "for the very purpose of obstructing the defense."

Id. at 706 (Goldberg, J., dissenting) (citing Wyche, 518 A.2d at 910). This finding is absent from the trial justice's decision. The majority also went further and reached the alternative ground in Wyche, concluding that "the 'high value' of Carrier's new statements to the defense could not have escaped the former prosecutor's attention * * *." Id. at 683. These findings were not discussed by the trial justice, or the state, or Tempest.[1] This is remarkable departure from our settled jurisprudence on many levels and is fraught with error. Not the least of which is the "raise-or-waive" rule.

This Court has had a long-standing and proud tradition of assuring that every person who appears before us is provided with a full and fair opportunity to be heard on the issues upon which the case is decided. The Attorney General himself has sought reargument in this Court, and his petition should be granted so that the parties may be heard and because of the important jurisprudential principle that is at stake in this case. This Court has consistently refused to hear issues that were not previously litigated and has never decided a case on an issue that was not addressed by the trial justice or the parties.

The raise-or-waive rule mandates that "an issue that has not been raised and articulated previously at trial is not properly preserved for appellate review." State v. Gomez, 848 A.2d 221, 237 (R.I. 2004) (quoting State v. Donato, 592 A.2d 140, 141 (R.I. 1991)). We have been steadfast in our insistence on adherence to the raise-or-waive rule, especially mandating that the issue first be addressed by the trial justice, the judicial officer to whom this issue is entrusted.

---

[1] In his memorandum in opposition to the state's petition for reargument, Tempest tacitly acknowledges the additional factual findings of the majority and goes one step further: attempting to bolster the majority's factual determinations by citing evidence not relied on and offering inferences not put forth by either the hearing justice or the majority. For example, Tempest laboriously sets forth the reasons why the hearing justice was justified in disbelieving the former prosecutor's testimony about why the Carrier statements were disclosed. None of these reasons was discussed by the hearing justice; more importantly, nowhere in the hearing justice's decision does he declare the former prosecutor to be not credible.

This is "an important guarantor of fairness and efficiency." See DeMarco v. Travelers Insurance Co., 26 A.3d 585, 628 n.55 (R.I. 2011). It is lacking in this case.

Our judicial system entrusts the role of factfinding to judicial officers in the trial courts; litigants justifiably cannot be expected to anticipate that additional factual findings will be made when their cases reach this Court. Indeed, our evidentiary rule on judicial notice demonstrates why this situation is so troubling. Under Rule 201(b) of the Rhode Island Rules of Evidence, a court can take judicial notice of a fact that is, among other requirements, "not subject to reasonable dispute."[2] Even for such indisputable facts, "[a] party is entitled * * * to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." Rule 201(e). As the Advisory Committee Notes to Rule 201(e) of the Federal Rules of Evidence explain,[3] "[b]asic considerations of procedural fairness demand [this] opportunity to be heard * * *." If an opportunity to be heard is mandated by basic considerations of fairness in the context of judicial notice of indisputable facts, surely it is also required when an appellate court makes an outcome-determinative finding. In my opinion, once the majority decided to make factual findings in this case, it should have provided the state with an opportunity to be heard on those findings. Cf. Lombardi v. City of Providence, 69 A.3d 846, 850 (R.I. 2013) (where this Court, after oral argument, ordered the parties to file supplemental memoranda on a case-dispositive issue not addressed by the parties in their original submissions).

---

[2] To be clear, judicial notice would not have been appropriate for the facts found by the majority because both the former prosecutor's purpose in not disclosing the Carrier statements and the value of the Carrier statements to the defense are subject to reasonable dispute.

[3] Our rule on judicial notice is modeled after Rule 201 of the Federal Rules of Evidence. See Rule 201 of the Rhode Island Rules of Evidence, Advisory Committee's Note at 1014.

Additionally, in its petition for reargument, the state has articulated sound reasons—apart from those mentioned in my dissent—demonstrating why reargument should be granted. For example, in order to rebut the majority's factual finding that the Carrier statement relating to Gordon Tempest placing the pipe in the closet was of high value under <u>Wyche</u>, the state pointed to the strenuous efforts of Tempest's defense counsel, both before and during trial, to exclude any evidence of a cover-up, including references to Brother Gordon. This circumstance—wholly overlooked by the majority—tends to support the notion that defense counsel would not have used this evidence at trial and, by extension, that the evidence does not meet <u>Wyche</u>'s high-value prong, thus explaining why the trial justice's decision did not rest on this prong of the <u>Wyche</u> analysis. The state should be given a full and fair opportunity—including additional oral argument—to address the majority's factual findings.

Appellate courts of last resort wield an awesome power: the ability to adjudicate a controversy in a definitive manner. <u>Cf.</u> <u>Brown v. Allen</u>, 344 U.S. 443, 540 (1953) (Jackson, J., concurring in the result) ("We are not final because we are infallible, but we are infallible only because we are final."). The safeguards of the judicial process ensure that, at the very least, before we utter the final word, parties to a case are afforded a full and fair opportunity to apprise this Court of its positions on the critical issues. In this case, the majority has insulated its findings—and the final declaration that flows from them—from a critical component of our judicial system. Consequently, I would grant the state's petition to reargue and urge my colleagues to do so.

Entered as an Order of this Court, this 10th day of November, 2016.

By Order,



Clerk


**TITLE OF CASE:**        Raymond D. Tempest, Jr. v. State of Rhode Island.

**CASE NO:**        No. 2015-257-M.P.
(PM 04-1896)

**COURT:**        Supreme Court

**DATE ORDER FILED:**        November 10, 2016

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        N/A – Court Order

**SOURCE OF APPEAL:**        Providence County Superior Court

**JUDGE FROM LOWER COURT**:

        Associate Justice Daniel A. Procaccini

**ATTORNEYS ON APPEAL:**

        For Plaintiff:   Michael Kendall, *Pro Hac Vice*
                      Lauren E. Jones , Esq.
                      Matthew R. Turnell, *Pro Hac Vice*
                      Katherine Dyson, *Pro Hac Vice*
                      Betty Ann Waters, Esq.

        For State:   Aaron L. Weisman
                      Department of Attorney General