# United States Court of Appeals
## For the First Circuit

Nos. 15-1771, 15-1818

IN RE: IDC CLAMBAKES, INC.,

Debtor

GOAT ISLAND SOUTH CONDOMINIUM ASSOCIATION, INC.;
CAPELLA SOUTH CONDOMINIUM ASSOCIATION, INC.,

Appellees, Cross-Appellants,

v.

IDC CLAMBAKES, INC.,

Appellant, Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, Chief U.S. District Judge]
[Hon. Melvin S. Hoffman, U.S. Bankruptcy Judge]

Before

Lynch, Baldock,* and Kayatta,
Circuit Judges.

Matthew J. McGowan, with whom Salter McGowan Sylvia & Leonard,
Inc., William P. Devereaux, Matthew C. Reeber, Joel K. Goloskie,
and Pannone Lopes Devereaux & West LLC were on brief, for
appellant/cross-appellee.

---

* Of the United States Court of Appeals for the Tenth Circuit,
sitting by designation.

William R. Grimm, with whom Adam M. Ramos, Hinckley, Allen & Snyder LLP, Charles D. Blackman, and Levy & Blackman LLP were on brief, for appellees/cross-appellants.

———————————

March 24, 2017

———————————

LYNCH, **Circuit Judge**. This bankruptcy appeal is the latest in decades-long litigation over a lucrative banquet facility, the Regatta Club in Newport, Rhode Island, which was constructed on a parcel of land at a time when the validity of the development rights to that parcel was in dispute. In 2004 and 2005, the Rhode Island Supreme Court found that the development rights had expired at the time of construction. See Am. Condo. Ass'n v. IDC, Inc. ("America I"), 844 A.2d 117, 134 (R.I. 2004); Am. Condo. Ass'n v. IDC, Inc. ("America II"), 870 A.2d 434, 443 (R.I. 2005). As a result, it found that title to both the land and the Regatta Club belonged to a group of condominium associations, not to IDC, Inc. and IDC Properties, Inc. ("Properties"), the development entities that had incurred the cost to build the Club. Two of the title-holding associations, Capella South Condominium Association, Inc. and Goat Island South Condominium Association, Inc. ("the Associations"), are the appellees and cross-appellants in this suit. IDC Clambakes, Inc. ("Clambakes"), the debtor here, was not a party before the Rhode Island Supreme Court.

Following the America decisions, Clambakes, which operated the Regatta Club, voluntarily filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The Associations then filed proofs of claim seeking relief for Clambakes' alleged trespass on their property between 1998 and April 8, 2005, the date of the

- 3 -

America II decision.  In 2013, this court rejected that trespass claim, affirming the bankruptcy court's finding that the Associations had impliedly consented to Clambakes' use and occupancy of the Regatta Club.  See In re IDC Clambakes, Inc., 727 F.3d 58, 69 (1st Cir. 2013).  We also remanded on the issue of whether there was a corresponding implied obligation that Clambakes pay the Associations for its use and occupancy of the Club.  See id. at 72.

On remand, the bankruptcy court first found that there was no implied-in-fact contract between the parties such that Clambakes was contractually obligated to make rent payments to the Associations.  The bankruptcy court then considered whether the Associations were nonetheless entitled to relief under a theory of unjust enrichment.  The court answered that question in the negative, finding that the benefit that the Associations conferred on Clambakes was fully offset by the value that the Associations themselves gained by being awarded ownership over the Regatta Club facility.  See In re IDC Clambakes, Inc. ("Clambakes"), 510 B.R. 678, 695 (Bankr. D.R.I. 2014).

The district court disagreed, finding clear error in the bankruptcy court's characterization of the benefit conferred on Clambakes as merely a ground lease, as well as in the bankruptcy court's unjust enrichment analysis.  Central to the district court's reasoning was its reading of the America opinions as to

- 4 -

the ownership of the Regatta Club.  The district court held that the findings in the America opinions must serve as "established facts" and bind "[a]ny equitable analysis" in this lawsuit.  Goat Island S. Condo. Ass'n v. IDC Clambakes, Inc. ("Goat Island"), 533 B.R. 845, 848-49 (D.R.I. 2015).  Ultimately, the district court concluded that Clambakes owed the Associations $2.6 million for its use and occupancy of the Regatta Club during the claim period. Id. at 851.

We affirm the bankruptcy court's decision to award no equitable relief to the Associations.  No implied-in-fact contract existed between the parties.  As to unjust enrichment, we see nothing in the America opinions to suggest that their holding regarding the Regatta Club's ownership should bear on, much less control, the question of whether principles of equity entitle the Associations to even more relief than the Rhode Island Supreme Court already afforded them.  Having concluded that the America opinions did not bind the bankruptcy court's equitable authority, we find no abuse of discretion in the bankruptcy court's ultimate decision that the Associations failed to meet their burden of showing that inequity would result if Clambakes did not pay them for the use and occupancy of the Regatta Club during the claim period.  Equity does not bestow additional relief on the Associations, which continue to benefit from the Regatta Club facility that they inherited without any investment of their own.

I.

The saga of this litigation has been exhaustively documented by various state and federal courts. We recite only those facts relevant to this appeal. We rely principally on the bankruptcy court's recounting of the facts, which the district court also adopted in full. See Clambakes, 510 B.R. at 682-85; Goat Island, 533 B.R. at 847.

In January 1988, Globe Manufacturing Co. ("Globe") recorded a declaration of condominium in the Land Evidence Records of the City of Newport. Clambakes, 510 B.R. at 682. That declaration, as amended and restated in March 1988, reserved Globe's right to develop a parcel of land known as the Reserved Area, but the development rights would expire if not exercised by December 31, 1994. Id. Globe assigned its development rights to IDC, Inc. and then to Properties.[1] Id. From April to December 1994, Properties introduced multiple amendments to the declaration seeking to extend the expiration date for the development rights and to exercise those rights. Id. The Associations questioned the validity of these amendments, and negotiations over the amendments carried on for years. Id.

---

[1] Thomas Roos is the president and sole shareholder of all the IDC entities, including IDC, Inc., Properties, and Clambakes. Only Clambakes is a party to this suit, and the parties do not dispute that Clambakes is a corporate entity distinct from IDC, Inc. and Properties.

In late 1997 and early 1998, while negotiations over Properties' development rights were ongoing, Properties spent approximately $3 million to construct the Regatta Club in the Reserved Area. Id. Despite the ongoing dispute over the development rights, the record reveals no evidence that the Associations sought to halt the construction. Id. As the bankruptcy court noted:

> In an oft-cited letter during this conflict, a representative of the America Condominium Association wrote to the Newport building inspector on February 9, 1998: "It's our understanding that a permit application has been filed with your Office for the purpose of constructing [the Regatta Club] . . . . While we don't have a particular objection as to the land use with respect to the building itself, we do have a substantial problem with the parking requirements for that [building] . . . ."

Id. (alterations in original).

Clambakes came into existence on April 18, 1996 as a corporate entity separate from the other IDC entities. Id. at 683. On March 1, 1998, Clambakes and Properties entered into a twenty-year lease, under which Clambakes would "use the Regatta Club and surrounding land making up the Reserved Area to provide event hosting and catering services." Id. Clambakes would pay Properties an annual rent equal to the higher of $180,000 or six percent of Clambakes' annual gross revenues. Id. Clambakes began operating the Club in late 1998 and began paying rent to Properties in 1999. Id. Until Clambakes filed for bankruptcy on June 16,

2005, "it ran a profitable business during the approximately seven years it operated the Regatta Club." Id.

A. The America Litigation

On May 29, 1999, the Associations sued Roos, IDC, Inc., and Properties in state court. Id. Clambakes was not a party to that suit. The Associations alleged that Properties had failed to exercise its development rights with respect to the Reserved Area before the December 31, 1994 expiration date; that the 1994 declaration amendments that had sought to extend the expiration date were invalid; and that "as a result, fee simple title to the Reserved Area had vested in the condominium unit owners on whose behalf the Associations acted." Id.

In America I, the Rhode Island Supreme Court ruled in favor of the Associations. See 844 A.2d at 133. It found that the amendments were invalid because they did not conform to the requirements of the Rhode Island Condominium Act. See R.I. Gen. Laws §§ 34-36.1-1.01 to -4.20; America I, 844 A.2d at 127–30. Accordingly, Properties had failed to exercise its development rights before their expiration, and title to the disputed property had vested in the Associations. Id. at 133. In reaching this conclusion, the Supreme Court rejected the defendants' argument that they had invested $3 million in developing the Regatta Club and that this investment should weigh against the Associations' winning title to the Club: "Considering that [the defendants]

developed the Reserved Area at a time when they were on notice that their right to do so was in dispute, we conclude that they constructed the parcel at their peril and cannot now contend that equity should prevent plaintiffs from prevailing because of their expenditures."  Id. at 135.

Nonetheless, the Rhode Island Supreme Court remanded for an accounting of the common expenses that Properties had continued to pay for the Reserved Area after December 31, 1994, the date on which its development rights expired.  Id.  "[T]o permit the plaintiffs to enjoy the benefits of such expenditures would constitute an inequitable windfall."  Id.  In remanding for this purpose, the court expressly stated that the accounting should "not include any profits that [Properties] may have earned from its operation of the Newport Regatta Club."  Id. at 135 n.24.

On April 8, 2005, after hearing reargument, the Rhode Island Supreme Court reaffirmed its ruling that title to the Reserved Area, including the Regatta Club, rested with the Associations.  See America II, 870 A.2d at 443.

B.  Clambakes' Bankruptcy Filing and 2013 First Circuit Decision

After the America II decision, the Associations asked the state court to issue writs of execution for possession and ejectment of Clambakes from the Reserved Area.  Clambakes, 510 B.R. at 684.  On June 16, 2005, Clambakes voluntarily filed for bankruptcy under Chapter 11 of the Bankruptcy Code.  See 11 U.S.C.

- 9 -

§§ 1101–1174; Clambakes, 510 B.R. at 684. In August 2005, a bankruptcy court judge entered a consent order that allowed Clambakes to operate the Regatta Club until November 5, 2005 after appropriately remunerating the Associations. Clambakes, 510 B.R. at 684. Clambakes complied and vacated the premises after hosting its final event on that date. Id.

Another order dated March 15, 2006 confirmed a plan of reorganization for Clambakes, under which its creditors would be paid in full. Funds to pay the Associations were escrowed because of the dispute over the amount, if any, that Clambakes owed the Associations. Id. The Associations collectively asserted a claim for approximately $3.5 million for Clambakes' alleged trespass on the Reserved Area from March 1, 1998 -- the date on which the Properties-Clambakes lease for the Regatta Club began -- to April 7, 2005. Id. Clambakes objected to the Associations' trespass-based proofs of claim, and the bankruptcy court granted summary judgment in Clambakes' favor. Id. at 685. After much procedural history that we need not recount, the bankruptcy court held that the Associations had impliedly consented to Clambakes' use and occupancy of the Reserved Area and thus that Clambakes had not trespassed. Id. The district court affirmed.

On appeal before this court, we first affirmed the bankruptcy court's conclusion that Clambakes had not trespassed because the Associations had given implied consent to Clambakes'

- 10 -

use and occupancy of the Reserved Area.  See In re IDC Clambakes, 727 F.3d at 69.  Next, we turned to the Associations' argument that "implied consent necessarily gives rise to an implied obligation to pay."  Id. at 71.  Although the Associations had properly preserved this argument, we found that it was "insufficiently developed for proper adjudication on appeal," as the bankruptcy court had not addressed it.  Id. at 72.  We thus remanded for determination of "whether implied consent in this case also gives rise to an implied obligation to pay the fair value for use and occupancy of the property."  Id.

C.   The Bankruptcy and District Courts' Decisions on Remand

On remand, the Associations advanced three arguments before the bankruptcy court.  First, they argued that "in the context of a trespass action[,] implied consent includes a presumed obligation to pay fair value absent proof of contrary intent." Clambakes, 510 B.R. at 686.  Second, they argued that there was an implied-in-fact contract between the parties such that Clambakes was obligated to pay the Associations.  Id. at 688.  Finally, they argued that they were entitled to relief under a theory of implied-in-law contract, also known as quasi-contract or unjust enrichment.  Id. at 685–86, 689.

The bankruptcy court quickly rejected the Associations' first argument, noting that there was no Rhode Island case law to support the proposition that "implied consent necessarily gives

- 11 -

rise to a presumptive obligation to pay fair value absent a showing of contrary intent."  Id. at 687.  The court also ruled that the Associations had failed to show the existence of an implied-in-fact contract because there was no evidence of a "mutual intent [between the parties] to enter into an agreement for the use and occupancy of the Reserved Area."  Id. at 689.

Likewise, the bankruptcy court found that the Associations failed to prove their entitlement to equitable relief.  "Recovery in quasi-contract requires a plaintiff to prove that '(1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) under the circumstances it would be inequitable for the defendant to retain such benefit without payment of the value thereof.'"  Id. (quoting Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 97 (R.I. 1992)).  While the Associations had carried their burden of proof as to the first two elements, id. at 691-92, the bankruptcy court concluded that they had failed to do so as to the third element, id. at 692-96.

In arriving at this result, the bankruptcy court first relied on expert testimony from both parties to estimate that the benefit that the Associations conferred on Clambakes -- "allowing it to use and occupy the Reserved Area land" -- was worth between $1 million and $1.625 million.  Id. at 692.  The unjust enrichment inquiry did not end there, however.  The court observed that the

Associations had denied Roos permission to remove the Regatta Club structure from the Reserved Area after the America II decision, even though "the owner of land is entitled to a mandatory injunction to require the removal of a structure that has been unlawfully placed upon his land." Id. at 693 (quoting Santilli v. Morelli, 230 A.2d 860, 863 (R.I. 1967)). Accordingly, "since the Associations chose to retain and profit from the Regatta Club, the resulting benefit reaped by the Associations must factor into the quasi-contract analysis." Id. at 694.

From this perspective, the bankruptcy court considered the fact that Properties had invested $3 million to build the Regatta Club while the Associations had not invested any amount,[2] that Clambakes had spent more than $550,000 to outfit and maintain the Club, and that the Associations had been able to rent the Club building to another tenant within two weeks of the date when Clambakes vacated the premises. Id. at 692–93. Of the minimum annual rent of $450,000 that the new tenant pays the Associations, $240,000 was attributable to the Regatta Club structure, based on both parties' expert testimony. Id. at 695. Taking all of these factors into account, the bankruptcy court concluded that

---

[2] The bankruptcy court recognized that Properties, and not Clambakes, had constructed the Regatta Club. But it also noted that "Clambakes paid Properties rent of approximately $1,125,000.00 over the course of the claim period, which could be viewed in whole or in part as shifting a substantial portion of Properties' construction costs to Clambakes." Id. at 694.

- 13 -

"Clambakes is entitled to a 'credit' for at least $1,625,000.00[,] . . . equal to the high end of the value of a ground lease" conferred on Clambakes. Id. at 695.

The district court affirmed the bankruptcy court's conclusion that no implied-in-fact contract existed, but it found reversible error in the bankruptcy court's unjust enrichment analysis. See Goat Island, 533 B.R. at 847–48. Before delving into the particularities of the bankruptcy court's alleged errors, the district court first noted that, notwithstanding the $3 million that Properties incurred to build the Regatta Club, the Rhode Island Supreme Court had ruled that the Associations owned the Club since its construction. Id. at 848. "These determinations are the established facts of this case, and this proceeding cannot be a vehicle to revisit or temper the effects of those holdings," the district court said. Id. at 848–49.

From that premise, the district court ruled that the bankruptcy court committed clear error on four fronts. First, the bankruptcy court should not have characterized the benefit conferred on Clambakes as a ground lease but rather as a ground and building lease. Properly characterized, according to the district court, the value of the benefit to Clambakes was $2.6 million. Id. at 849. Second, the bankruptcy court should not have considered the $3 million that Properties had incurred in constructing the Regatta Club. Id. at 850. Third, the bankruptcy

- 14 -

court should not have considered the $550,000 that Clambakes had incurred in outfitting and maintaining the Regatta Club. Id. Finally, the bankruptcy court should not have "deduct[ed] at least $240,000 per year from the use and occupancy payment to account for goodwill and the value of the Regatta Club" when there was "insufficient particularized evidence" on which to ground the quantification of that goodwill. Id. at 851. The district court ordered Clambakes to pay the Associations $2.6 million for its use and occupancy of the Regatta Club during the claim period.[3] Id.

D. Arguments on Appeal

Each party appeals discrete aspects of the bankruptcy and district courts' decisions. Clambakes argues that the bankruptcy court should not have reached the Associations' arguments about implied-in-fact contract and unjust enrichment. Further, even assuming the unjust enrichment claim was properly heard, Clambakes challenges the district court's finding of clear error in the bankruptcy court's equitable analysis.

---

[3] Dissatisfied with the $2.6 million award, the Associations moved to alter or amend the district court's judgment. The Associations sought (1) an additional $7,290, plus interest, for sewer repair costs; (2) approximately $2.7 million in interest on the $2.6 million award for use and occupancy; and (3) costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. The district court granted the motion as to the sewer repair costs but denied it as to the other two claims. The Associations have cross-appealed that ruling, which our resolution has made moot.

- 15 -

The Associations argue that the bankruptcy and district courts both erred in finding that no implied-in-fact contract existed. They also argue that the bankruptcy court erred in awarding no restitutionary relief and that the district court erred in granting no interest on top of the $2.6 million award for use and occupancy.

II.

A. Clambakes' Threshold Arguments

Before we proceed further, we reject Clambakes' various arguments that the bankruptcy court should not have reached the implied-in-fact contract and unjust enrichment claims, but rather should have ended the case earlier. Clambakes advances two arguments on this point. It primarily argues that our remand in 2013 required the bankruptcy court to explore only whether implied consent necessarily, as a matter of law, gives rise to an obligation to pay. Once the bankruptcy court found that no such principle exists under Rhode Island law, the inquiry should have been over and the Associations' claims dismissed. In the alternative, Clambakes contends that the Associations should have been barred from making any implied-in-fact contract or unjust enrichment claim because they failed to preserve such arguments by articulating only a trespass theory in their proofs of claim.

Each line of reasoning misunderstands aspects of our 2013 opinion. First, the plain language of that opinion renders

- 16 -

unavailing Clambakes' argument that our remand was limited to a question of law. As we there stated, the remand order "directed . . . the trial court in the first instance [to] determin[e] whether the facts in this case and the law of Rhode Island support a finding of consent to operate free of charge or whether the Associations conditioned their implied consent on an implied obligation to pay." In re IDC Clambakes, 727 F.3d at 72 (emphasis added).

As to Clambakes' contention that the Associations' claims based on the existence of an implied-in-fact or quasi-contract are unpreserved, we already addressed -- and already rejected -- this precise argument in 2013. See id. at 71-72 (finding that Associations' argument was preserved because they had raised it "[i]n a post-trial motion filed . . . just over a week after the trial and 18 months before the bankruptcy court issued its decision"). We do not revisit that ruling today.

B. Standard of Review

"The court of appeals . . . undertakes an independent review of [a] bankruptcy court order, utilizing the same appellate standards governing the district court review." In re LaRoche, 969 F.2d 1299, 1301 (1st Cir. 1992). We thus review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo "without deference to the district court's ruling." In re IDC Clambakes, 727 F.3d at 63.

- 17 -

"[T]o the extent that the ultimate decision in a restitution case rests on a judgment regarding the equities of the case, rather than application of an established rule of restitution, that exercise of judgment is reviewed only for abuse of discretion." Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 66 (1st Cir. 2001). This approach "reflect[s] our view that the finder of fact 'who has had first-hand exposure to the litigants and the evidence is in a considerably better position to bring the scales into balance than an appellate tribunal.'" Id. (quoting Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 875 (1st Cir. 1995)).

C. Implied-in-Fact Contract

We affirm, as did the district court, the bankruptcy court's conclusion that there was no implied-in-fact contract under which Clambakes agreed to pay the Associations for its use and occupancy of the Regatta Club.

Under Rhode Island law, an implied-in-fact contract "is a form of express contract wherein the elements of the contract are found in and determined from the relations of, and the communications between the parties, rather than from a single clearly expressed written document." Marshall Contractors, Inc. v. Brown Univ., 692 A.2d 665, 669 (R.I. 1997). "[A] contract implied in fact must contain all the elements of an express contract. So, such a contract is dependent on mutual agreement or

consent, and on the intention of the parties; and a meeting of the minds is required."  Bailey v. West, 249 A.2d 414, 416 (R.I. 1969) (citation omitted); see also Goat Island, 533 B.R. at 847 n.2.

The bankruptcy court properly applied this case law to the facts to find that the Associations had failed to show evidence of a meeting of the minds.  As the court noted, the record lacked evidence "that the Associations ever requested a rent payment from Clambakes or that Clambakes ever made a rent payment to the Associations.  There [wa]s no evidence of mutual agreement as to duration and scope of occupancy."  Clambakes, 510 B.R. at 689.  If anything, the fact that Clambakes paid rent to Properties demonstrated Clambakes' understanding that Properties, rather than the Associations, was the property owner.  Given Clambakes' lease with Properties, "there would be no reason to lease the property again from another entity," as the bankruptcy court observed.  Id. There is no error.

D.  Unjust Enrichment

We do not find error in the bankruptcy court's fact finding in the course of its unjust enrichment analysis.  Nor do we find any abuse of discretion in its equitable balancing or its ultimate conclusion that the Associations failed to prove their entitlement to restitutionary relief.

"The Supreme Court has long recognized that bankruptcy courts are courts of equity with the power to apply flexible

equitable remedies in bankruptcy proceedings." In re Trailer Source, Inc., 555 F.3d 231, 242 (6th Cir. 2009) (citing Young v. United States, 535 U.S. 43, 50 (2002)). Nothing in the America decisions suggests that they should be read as diminishing the bankruptcy court's broad equitable authority. Indeed, neither America I nor America II suggests that its findings on the rightful ownership of the Regatta Club should have preclusive effect over all future litigation related to the Club, let alone over a claim of unjust enrichment from the Associations after they have already won the keys to the Club building.[4]

The question presented in the America litigation was whether the Associations or one of the IDC entities (precisely, IDC, Inc. or Properties) had title to the Regatta Club. The issues of trespass and unjust enrichment were not before the America court. In order to answer the question of ownership, the Rhode Island Supreme Court principally engaged in an exercise of statutory interpretation, analyzing whether the amendments to the condominium declaration abided by the requirements of the Rhode Island Condominium Act. America I, 844 A.2d at 127-30.

Of course, the Rhode Island Supreme Court also found that Properties had begun constructing the Regatta Club in the

_____

[4] We do not wade into the difficult preclusion issues that would exist if the Rhode Island Supreme Court's decisions were treated otherwise. We simply read the America decisions differently than did the district court.

Reserved Area despite knowing that title to that land was in dispute and, as a result, that Properties' construction expenditure would not factor into the question of proper ownership. Id. at 134-35. But the fact that the America court declined to take into account the construction expenditure when adjudicating the Regatta Club's ownership does not mean that the construction expenditure cannot be considered in a later equitable analysis -- by a federal bankruptcy court dealing with a debtor that was not a party to the America litigation -- as to whether the Associations should receive additional relief beyond the Regatta Club building to which they have already won title.

In fact, even after declaring the Associations to be the rightful owners of the Regatta Club, the America court was careful to avoid bestowing on the Associations an "inequitable windfall." Id. at 135. Accordingly, it remanded for an accounting of the common expenses that Properties had paid after its development rights expired, so that the Associations would not benefit at Properties' expense. Id. It further emphasized that this accounting should "not include any profits that [Properties] may have earned from its operation of the Newport Regatta Club," signaling that redistributing such profits to the Associations would be inequitable. Id. at 135 n.24. In short, we do not read the America decisions as tying the hands of the bankruptcy court

in deciding whether the equities of this case weigh in favor of additional relief for the Associations.

Having determined that the <u>America</u> decisions do not dictate the result of the bankruptcy court's equitable determination, we can quickly conclude that the bankruptcy court did not err in its factual findings and did not abuse its discretion in awarding no restitutionary relief.

The Associations first argue that the bankruptcy court erred by characterizing the benefit conferred on Clambakes as occupancy of only the Reserved Area land, rather than of both the land and the Regatta Club facility built on it. The district court similarly found error in the bankruptcy court's characterization of the benefit as a ground lease. <u>See</u> <u>Goat Island</u>, 533 B.R. at 849. The district court fairly read the bankruptcy court opinion as determining the benefit conferred on Clambakes to equal the value of a ground lease even though Clambakes used both the building and the ground. We see no reason, though, why this reasoning constituted clear error sufficient to set aside the equitable balancing undertaken by the bankruptcy court. While Clambakes indeed used both the building and the land, it paid over $550,000 to improve the building, and it made rental payments to Properties totaling approximately $1.125 million to use the building. The Associations, in turn, received for free a building that collectively cost Properties and Clambakes roughly $3.55

million to build and improve. In determining on this record the net benefit Clambakes received, it was by no means unreasonable not to require Clambakes to also pay the Associations for use of the building.

The Associations also contend that the bankruptcy court should not have taken into account Properties' construction cost and Clambakes' rent payments to Properties in the unjust enrichment analysis. Doing so was error, they say, because Clambakes itself did not bear the construction cost, and we must treat Properties and Clambakes as the separate corporate entities that they are. But Rhode Island law on the equitable remedy of unjust enrichment "presupposes that if plaintiff were left without a remedy, plaintiff would suffer a net loss. That is, defendant would have received a benefit 'at the expense of' plaintiff." R.I. Bhd. of Corr. Officers v. Rhode Island, 264 F. Supp. 2d 87, 105 (D.R.I. 2003) (emphases added) (quoting Merchs. Mut. Ins. Co. v. Newport Hosp., 272 A.2d 329, 332 (R.I. 1971)). Regardless of which IDC entity paid for the Regatta Club's construction, it is undisputed that the Associations did not contribute a penny toward construction. See Clambakes, 510 B.R. at 693. The Associations' inability to recover rent for the claim period thus does not result in a "net loss" to them.

Likewise, the bankruptcy court properly considered the $550,000 that Clambakes incurred in outfitting and maintaining the

Regatta Club during the claim period. In <u>Dellagrotta</u> v. <u>Dellagrotta</u>, 873 A.2d 101 (R.I. 2005), the Rhode Island Supreme Court allowed a woman to recover, under an unjust enrichment theory, half the cost of improvements that she made to a house that she initially mistakenly believed her former in-laws had gifted to her and her former spouse. <u>Id.</u> at 114-15. The former daughter-in-law was able to recover although she had stayed in the house after the end of her marriage, even after receiving a notice of termination of tenancy from her in-laws. <u>Id.</u> 113. In allowing her to recover, the court noted that "although the circumstances do not warrant conveyance of the house to [her], it is quite another thing to allow plaintiffs to realize the bounty of her labors." <u>Id.</u> at 114. So too here. Even assuming that Clambakes knew that title to the Regatta Club was in dispute, that knowledge is insufficient to withhold credit to Clambakes for its expenses and effort in improving upon the Club structure.

Finally, we reach the issue of goodwill. The district court concluded that although the bankruptcy court did not err in finding some transfer of goodwill from Clambakes to the Associations, it erred in quantifying the value of that goodwill as "at least $240,000." <u>Goat Island</u>, 533 B.R. at 851. On appeal, the Associations also emphasize that Clambakes did not transfer any business to the Associations because Clambakes continues to operate its business in other Newport locations.

As an initial matter, it is not clear from the bankruptcy court's opinion that the $240,000 per year "credit" that it identified was a quantification of goodwill. Rather, the bankruptcy court's description suggests that it sought to quantify the value of the Regatta Club building to the Associations. See Clambakes, 510 B.R. at 695 ("The quasi-contract analysis boils down to weighing Clambakes' use of the Reserved Area land valued at $1,000,000.00 to $1,625,000.00 for the claim period against the stream of income to the Associations from the Regatta Club building, sluicing along at a rate of at least $240,000.00 per year." (emphasis added)). Further, the bankruptcy court derived the $240,000 figure by relying on a report submitted by the Associations' expert. Id.

Even if the bankruptcy court's aim was to quantify goodwill, however, we cannot say that the court clearly erred. Given the risk and effort that Clambakes undertook in establishing a successful event-catering business at the Reserved Area location, it is not unreasonable to infer that the Associations were able to charge a premium to rent that location to a similar business beyond what they could have charged for an unproven lot of land. At oral argument, the Associations could not point to a single piece of record evidence to rebut this inference that the prior operation of a successful business on a lot of land would enhance the value of that lot.

There was no abuse of discretion in the bankruptcy court's decision to award no restitutionary relief; to sustain Clambakes' objections to each of the Associations' claims; and to disallow Claims 16, 17, 18, and 19 in their entirety. Nor was there any legal or factual error. We also agree with the district court's award of $7,290.00, plus interest, for the sewer repair cost. In light of this disposition, we need not entertain the Associations' argument for interest on their restitutionary award. The judgment of the bankruptcy court is <u>affirmed</u> with the noted modification.

Costs are awarded to Clambakes.